# BORDENKIRCHER, PENITENTIARY SUPERINTEND-ENT *v.* HAYES

No. 76–1334.   Argued November 9, 1977—Decided January 18, 1978

*Robert L. Chenoweth,* Assistant Attorney General of Kentucky, argued the cause for petitioner.   With him on the brief was *Robert F. Stephens,* Attorney General.

*J. Vincent Aprile II* argued the cause and filed a brief for respondent.*

*John L. Hill,* Attorney General, *David M. Kendall,* First Assistant

MR. JUSTICE STEWART delivered the opinion of the Court.

The question in this case is whether the Due Process Clause of the Fourteenth Amendment is violated when a state prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged.

I

The respondent, Paul Lewis Hayes, was indicted by a Fayette County, Ky., grand jury on a charge of uttering a forged instrument in the amount of $88.30, an offense then punishable by a term of 2 to 10 years in prison. Ky. Rev. Stat. § 434.130 (1973) (repealed 1975). After arraignment, Hayes, his retained counsel, and the Commonwealth's Attorney met in the presence of the Clerk of the Court to discuss a possible plea agreement. During these conferences the prosecutor offered to recommend a sentence of five years in prison if Hayes would plead guilty to the indictment. He also said that if Hayes did not plead guilty and "save the court the inconvenience and necessity of a trial," he would return to the grand jury to seek an indictment under the Kentucky Habitual Criminal Act,[1] then Ky. Rev. Stat. § 431.190 (1973) (repealed 1975), which would subject Hayes to a mandatory sentence of

Attorney General, *Joe B. Dibrell, Jr.,* and *Anita Ashton,* Assistant Attorneys General, filed a brief for the State of Texas as *amicus curiae* urging reversal.

*Paul N. Halvonik, Charles M. Sevilla, Ephraim Margolin,* and *Sheldon Portman* filed a brief for the California State Public Defender et al. as *amici curiae* urging affirmance.

[1] While cross-examining Hayes during the subsequent trial proceedings the prosecutor described the plea offer in the following language:

"Isn't it a fact that I told you at that time [the initial bargaining session] if you did not intend to plead guilty to five years for this charge and . . . save the court the inconvenience and necessity of a trial and taking up this time that I intended to return to the grand jury and ask them to indict you based upon these prior felony convictions?" Tr. 194.

life imprisonment by reason of his two prior felony convictions.[2] Hayes chose not to plead guilty, and the prosecutor did obtain an indictment charging him under the Habitual Criminal Act. It is not disputed that the recidivist charge was fully justified by the evidence, that the prosecutor was in possession of this evidence at the time of the original indictment, and that Hayes' refusal to plead guilty to the original charge was what led to his indictment under the habitual criminal statute.

A jury found Hayes guilty on the principal charge of uttering a forged instrument and, in a separate proceeding, further found that he had twice before been convicted of felonies. As required by the habitual offender statute, he was sentenced to a life term in the penitentiary. The Kentucky Court of Appeals rejected Hayes' constitutional objections to the enhanced sentence, holding in an unpublished opinion that imprisonment for life with the possibility of parole was constitutionally permissible in light of the previous felonies of which Hayes had been convicted,[3] and that the prosecutor's decision to indict him as a habitual offender was a legitimate use of available leverage in the plea-bargaining process.

---

[2] At the time of Hayes' trial the statute provided that "[a]ny person convicted a . . . third time of felony . . . shall be confined in the penitentiary during his life." Ky. Rev. Stat. § 431.190 (1973) (repealed 1975). That statute has been replaced by Ky. Rev. Stat. § 532.080 (Supp. 1977) under which Hayes would have been sentenced to, at most, an indeterminate term of 10 to 20 years. § 532.080 (6) (b). In addition, under the new statute a previous conviction is a basis for enhanced sentencing only if a prison term of one year or more was imposed, the sentence or probation was completed within five years of the present offense, and the offender was over the age of 18 when the offense was committed. At least one of Hayes' prior convictions did not meet these conditions. See n. 3, *infra.*

[3] According to his own testimony, Hayes had pleaded guilty in 1961, when he was 17 years old, to a charge of detaining a female, a lesser included offense of rape, and as a result had served five years in the state reformatory. In 1970 he had been convicted of robbery and sentenced to five years' imprisonment, but had been released on probation immediately.

On Hayes' petition for a federal writ of habeas corpus, the United States District Court for the Eastern District of Kentucky agreed that there had been no constitutional violation in the sentence or the indictment procedure, and denied the writ.[4]   The Court of Appeals for the Sixth Circuit reversed the District Court's judgment. *Hayes* v. *Cowan,* 547 F. 2d 42.   While recognizing "that plea bargaining now plays an important role in our criminal justice system," *id.,* at 43, the appellate court thought that the prosecutor's conduct during the bargaining negotiations had violated the principles of *Blackledge* v. *Perry,* 417 U. S. 21, which "protect[ed] defendants from the vindictive exercise of a prosecutor's discretion." 547 F. 2d, at 44.   Accordingly, the court ordered that Hayes be discharged "except for his confinement under a lawful sentence imposed solely for the crime of uttering a forged instrument.". *Id.,* at 45.   We granted certiorari to consider a constitutional question of importance in the administration of criminal justice.   431 U. S. 953.

## II

It may be helpful to clarify at the outset the nature of the issue in this case.   While the prosecutor did not actually obtain the recidivist indictment until after the plea conferences had ended, his intention to do so was clearly expressed at the outset of the plea negotiations.   Hayes was thus fully informed of the true terms of the offer when he made his decision to plead not guilty.   This is not a situation, therefore, where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty.[5]   As a practical matter, in short, this

---

[4] The opinion of the District Court is unreported.

[5] Compare *United States ex rel. Williams* v. *McMann,* 436 F. 2d 103 (CA2), with *United States* v. *Ruesga-Martinez,* 534 F. 2d 1367, 1370 (CA9).   In citing these decisions we do not necessarily endorse them.

case would be no different if the grand jury had indicted Hayes as a recidivist from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain.

The Court of Appeals nonetheless drew a distinction between "concessions relating to prosecution under an existing indictment," and threats to bring more severe charges not contained in the original indictment—a line it thought necessary in order to establish a prophylactic rule to guard against the evil of prosecutorial vindictiveness.[6] Quite apart from this chronological distinction, however, the Court of Appeals found that the prosecutor had acted vindictively in the present case since he had conceded that the indictment was influenced by his desire to induce a guilty plea.[7] The ultimate conclusion of the Court of Appeals thus seems to have been that a prosecutor acts vindictively and in violation of due process of law whenever his charging decision is influenced by what he hopes to gain in the course of plea bargaining negotiations.

## III

We have recently had occasion to observe: "Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice sys-

---

[6] "Although a prosecutor may in the course of plea negotiations offer a defendant concessions relating to prosecution under an existing indictment . . . he may not threaten a defendant with the consequence that more severe charges may be brought if he insists on going to trial. When a prosecutor obtains an indictment less severe than the facts known to him at the time might permit, he makes a discretionary determination that the interests of the state are served by not seeking more serious charges. . . . Accordingly, if after plea negotiations fail, he then procures an indictment charging a more serious crime, a strong inference is created that the only reason for the more serious charges is vindictiveness. Under these circumstances, the prosecutor should be required to justify his action." 547 F. 2d, at 44–45.

[7] "In this case, a vindictive motive need not be inferred. The prosecutor has admitted it." *Id.*, at 45.

tem. Properly administered, they can benefit all concerned." *Blackledge* v. *Allison,* 431 U. S. 63, 71. The open acknowledgment of this previously clandestine practice has led this Court to recognize the importance of counsel during plea negotiations, *Brady* v. *United States,* 397 U. S. 742, 758, the need for a public record indicating that a plea was knowingly and voluntarily made, *Boykin* v. *Alabama,* 395 U. S. 238, 242, and the requirement that a prosecutor's plea-bargaining promise must be kept, *Santobello* v. *New York,* 404 U. S. 257, 262. The decision of the Court of Appeals in the present case, however, did not deal with considerations such as these, but held that the substance of the plea offer itself violated the limitations imposed by the Due Process Clause of the Fourteenth Amendment. Cf. *Brady* v. *United States, supra,* at 751 n. 8. For the reasons that follow, we have concluded that the Court of Appeals was mistaken in so ruling.

## IV

This Court held in *North Carolina* v. *Pearce,* 395 U. S. 711, 725, that the Due Process Clause of the Fourteenth Amendment "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." The same principle was later applied to prohibit a prosecutor from reindicting a convicted misdemeanant on a felony charge after the defendant had invoked an appellate remedy, since in this situation there was also a "realistic likelihood of 'vindictiveness.'" *Blackledge* v. *Perry,* 417 U. S., at 27.

In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power." *Parker* v. *North Carolina,* 397 U. S. 790,

809 (opinion of BRENNAN, J.). The Court has emphasized that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, see *Colten* v. *Kentucky*, 407 U. S. 104; *Chaffin* v. *Stynchcombe*, 412 U. S. 17, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction. See *Blackledge* v. *Perry*, *supra*, at 26–28.

To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, see *North Carolina* v. *Pearce, supra*, at 738 (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." *Chaffin* v. *Stynchcombe, supra*, at 32–33, n. 20. See *United States* v. *Jackson*, 390 U. S. 570. But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. *Brady* v. *United States, supra*, at 752. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. 397 U. S., at 758. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial. See ABA Project on Standards for Criminal Justice, Pleas of Guilty § 3.1 (App. Draft 1968);

Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv. L. Rev. 564 (1977). Cf. *Brady* v. *United States, supra,* at 751; *North Carolina* v. *Alford,* 400 U. S. 25.

While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin* v. *Stynchcombe, supra,* at 31. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

It is not disputed here that Hayes was properly chargeable under the recidivist statute, since he had in fact been convicted of two previous felonies. In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.[8] Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler* v. *Boles,* 368 U. S. 448, 456. To hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard," which, like race or religion,

---

[8] This case does not involve the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused, see ALI Model Code of Pre-Arraignment Procedure, Commentary to § 350.3, pp. 614–615 (1975), which might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider. Cf. *Brady* v. *United States,* 397 U. S. 742, 758.

may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself. Moreover, a rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged. See *Blackledge* v. *Allison,* 431 U. S., at 76.

There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse.[9] And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise. We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment.

Accordingly, the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, dissenting.

I feel that the Court, although purporting to rule narrowly (that is, on "the course of conduct engaged in by the prosecutor in this case," *ante,* this page), is departing from, or at least restricting, the principles established in *North Carolina* v.

---

[9] This potential has led to many recommendations that the prosecutor's discretion should be controlled by means of either internal or external guidelines. See ALI Model Code of Pre-Arraignment Procedure for Criminal Justice §§ 350.3 (2)–(3) (1975); ABA Project on Standards for Criminal Justice, The Prosecution Function §§ 2.5, 3.9 (App. Draft 1971); Abrams, Internal Policy: Guiding the Exercise of Prosecutorial Discretion, 19 UCLA L. Rev. 1 (1971).

*Pearce,* 395 U. S. 711 (1969), and in *Blackledge* v. *Perry,* 417 U. S. 21 (1974). If those decisions are sound and if those principles are salutary, as I must assume they are, they require, in my view, an affirmance, not a reversal, of the judgment of the Court of Appeals in the present case.

In Pearce, as indeed the Court notes, *ante,* at 362, it was held that "vindictiveness against a defendant for having success-fully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U. S., at 725. Accordingly, if, on the new trial, the sentence the defendant receives from the court is greater than that imposed after the first trial, it must be explained by reasons "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," other than his having pursued the appeal or collateral remedy. *Id.,* at 726. On the other hand, if the sentence is imposed by the jury and not by the court, if the jury is not aware of the original sentence, and if the second sentence is not otherwise shown to be a product of vindictive-ness, *Pearce* has no application. *Chaffin* v. *Stynchcombe,* 412 U. S. 17 (1973).

Then later, in *Perry,* the Court applied the same principle to prosecutorial conduct where there was a "realistic likelihood of 'vindictiveness.'" 417 U. S., at 27. It held that the requirement of Fourteenth Amendment due process prevented a prosecutor's reindictment of a convicted misdemeanant on a felony charge after the defendant had exercised his right to appeal the misdemeanor conviction and thus to obtain a trial *de novo.* It noted the prosecution's "considerable stake" in discouraging the appeal. *Ibid.*

The Court now says, however, that this concern with vin-dictiveness is of no import in the present case, despite the difference between five years in prison and a life sentence, because we are here concerned with plea bargaining where there is give-and-take negotiation, and where, it is said, *ante,*

at 363, "there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Yet in this case vindictiveness is present to the same extent as it was thought to be in *Pearce* and in *Perry;* the prosecutor here admitted, see *ante,* at 358 n. 1, that the sole reason for the new indictment was to discourage the respondent from exercising his right to a trial.[1] Even had such an admission not been made, when plea negotiations, conducted in the face of the less serious charge under the first indictment, fail, charging by a second indictment a more serious crime for the same conduct creates "a strong inference" of vindictiveness. As then Judge McCree aptly observed, in writing for a unanimous panel of the Sixth Circuit, the prosecutor initially "makes a discretionary determination that the interests of the state are served by not seeking more serious charges." *Hayes* v. *Cowan,* 547 F. 2d 42, 44 (1976). I therefore do not understand why, as in *Pearce,* due process does not require that the prosecution justify its action on some basis other than discouraging respondent from the exercise of his right to a trial.

Prosecutorial vindictiveness, it seems to me, in the present narrow context, is the fact against which the Due Process Clause ought to protect. I perceive little difference between vindictiveness after what the Court describes, *ante,* at 362, as the exercise of a "legal right to attack his original conviction,"

---

[1] In *Brady* v. *United States,* 397 U. S. 742 (1970), where the Court as a premise accepted plea bargaining as a legitimate practice, it nevertheless observed:

"We here make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty." *Id.,* at 751 n. 8. See also *Colon* v. *Hendry,* 408 F. 2d 864 (CA5 1969); *United States* v. *Jamison,* 164 U. S. App. D. C. 300, 505 F. 2d 407 (1974); *United States* v. *DeMarco,* 401 F. Supp. 505 (CD Cal. 1975), aff'd, 550 F. 2d 1224 (CA9 1977), cert. denied, *post,* p. 827; *United States* v. *Ruesga-Martinez,* 534 F. 2d 1367, 1369 (CA9 1976).

and vindictiveness in the " 'give-and-take negotiation common in plea bargaining.' " Prosecutorial vindictiveness in any context is still prosecutorial vindictiveness. The Due Process Clause should protect an accused against it, however it asserts itself. The Court of Appeals rightly so held, and I would affirm the judgment.

It might be argued that it really makes little difference how this case, now that it is here, is decided. The Court's holding gives plea bargaining full sway despite vindictiveness. A contrary result, however, merely would prompt the aggressive prosecutor to bring the greater charge initially in every case, and only thereafter to bargain. The consequences to the accused would still be adverse, for then he would bargain against a greater charge, face the likelihood of increased bail, and run the risk that the court would be less inclined to accept a bargained plea. Nonetheless, it is far preferable to hold the prosecution to the charge it was originally content to bring and to justify in the eyes of its public.[2]

MR. JUSTICE POWELL, dissenting.

Although I agree with much of the Court's opinion, I am not satisfied that the result in this case is just or that the

---

[2] That prosecutors, without saying so, may sometimes bring charges more serious than they think appropriate for the ultimate disposition of a case, in order to gain bargaining leverage with a defendant, does not add support to today's decision, for this Court, in its approval of the advantages to be gained from plea negotiations, has never openly sanctioned such deliberate overcharging or taken such a cynical view of the bargaining process. See *North Carolina* v. *Alford,* 400 U. S. 25 (1970); *Santobello* v. *New York,* 404 U. S. 257 (1971). Normally, of course, it is impossible to show that this is what the prosecutor is doing, and the courts necessarily have deferred to the prosecutor's exercise of discretion in initial charging decisions.

Even if overcharging is to be sanctioned, there are strong reasons of fairness why the charges should be presented at the beginning of the bargaining process, rather than as a filliped threat at the end. First, it means that a prosecutor is required to reach a charging decision without

conduct of the plea bargaining met the requirements of due process.

Respondent was charged with the uttering of a single forged check in the amount of $88.30. Under Kentucky law, this offense was punishable by a prison term of from 2 to 10 years, apparently without regard to the amount of the forgery. During the course of plea bargaining, the prosecutor offered respondent a sentence of five years in consideration of a guilty plea. I observe, at this point, that five years in prison for the offense charged hardly could be characterized as a generous offer. Apparently respondent viewed the offer in this light and declined to accept it; he protested that he was innocent and insisted on going to trial. Respondent adhered to this position even when the prosecutor advised that he would seek

---

any knowledge of the particular defendant's willingness to plead guilty; hence the defendant who truly believes himself to be innocent, and wishes for that reason to go to trial, is not likely to be subject to quite such a devastating gamble since the prosecutor has fixed the incentives for the average case.

Second, it is healthful to keep charging practices visible to the general public, so that political bodies can judge whether the policy being followed is a fair one. Visibility is enhanced if the prosecutor is required to lay his cards on the table with an indictment of public record at the beginning of the bargaining process, rather than making use of unrecorded verbal warnings of more serious indictments yet to come.

Finally, I would question whether it is fair to pressure defendants to plead guilty by threat of reindictment on an enhanced charge for the same conduct when the defendant has no way of knowing whether the prosecutor would indeed be entitled to bring him to trial on the enhanced charge. Here, though there is no dispute that respondent met the then-current definition of a habitual offender under Kentucky law, it is conceivable that a properly instructed Kentucky grand jury, in response to the same considerations that ultimately moved the Kentucky Legislature to amend the habitual offender statute, would have refused to subject respondent to such an onerous penalty for his forgery charge. There is no indication in the record that, once the new indictment was obtained, respondent was given another chance to plead guilty to the forged check charge in exchange for a five-year sentence.

a new indictment under the State's Habitual Criminal Act which would subject respondent, if convicted, to a mandatory life sentence because of two prior felony convictions.

The prosecutor's initial assessment of respondent's case led him to forgo an indictment under the habitual criminal statute. The circumstances of respondent's prior convictions are relevant to this assessment and to my view of the case. Respondent was 17 years old when he committed his first offense. He was charged with rape but pleaded guilty to the lesser included offense of "detaining a female." One of the other participants in the incident was sentenced to life imprisonment. Respondent was sent not to prison but to a reformatory where he served five years. Respondent's second offense was robbery. This time he was found guilty by a jury and was sentenced to five years in prison, but he was placed on probation and served no time. Although respondent's prior convictions brought him within the terms of the Habitual Criminal Act, the offenses themselves did not result in imprisonment; yet the addition of a conviction on a charge involving $88.30 subjected respondent to a mandatory sentence of imprisonment for life.[1] Persons convicted of rape and murder often are not punished so severely.

No explanation appears in the record for the prosecutor's decision to escalate the charge against respondent other than respondent's refusal to plead guilty. The prosecutor has conceded that his purpose was to discourage respondent's assertion of constitutional rights, and the majority accepts this characterization of events. See *ante,* at 358 n. 1, 364.

It seems to me that the question to be asked under the circumstances is whether the prosecutor reasonably might have charged respondent under the Habitual Criminal Act in the first place. The deference that courts properly accord the

---

[1] It is suggested that respondent will be eligible for parole consideration after serving 15 years.

exercise of a prosecutor's discretion perhaps would foreclose judicial criticism if the prosecutor originally had sought an indictment under that Act, as unreasonable as it would have seemed.[2] But here the prosecutor evidently made a reasonable, responsible judgment not to subject an individual to a mandatory life sentence when his only new offense had societal implications as limited as those accompanying the uttering of a single $88 forged check and when the circumstances of his prior convictions confirmed the inappropriateness of applying the habitual criminal statute.[3] I think it may be inferred that the prosecutor himself deemed it unreasonable and not in the public interest to put this defendant in jeopardy of a sentence of life imprisonment.

There may be situations in which a prosecutor would be fully justified in seeking a fresh indictment for a more serious offense. The most plausible justification might be that it would have been reasonable and in the public interest initially

---

[2] The majority suggests, *ante*, at 360–361, that this case cannot be distinguished from the case where the prosecutor initially obtains an indictment under an enhancement statute and later agrees to drop the enhancement charge in exchange for a guilty plea. I would agree that these two situations would be alike *only if* it were assumed that the hypothetical prosecutor's decision to charge under the enhancement statute was occasioned not by consideration of the public interest but by a strategy to discourage the defendant from exercising his constitutional rights. In theory, I would condemn both practices. In practice, the hypothetical situation is largely unreviewable. The majority's view confuses the propriety of a particular exercise of prosecutorial discretion with its unreviewability. In the instant case, however, we have no problem of proof.

[3] Indeed, the Kentucky Legislature subsequently determined that the habitual criminal statute under which respondent was convicted swept too broadly and did not identify adequately the kind of prior convictions that should trigger its application. At least one of respondent's two prior convictions would not satisfy the criteria of the revised statute; and the impact of the statute, when applied, has been reduced significantly in situations, like this one, where the third offense is relatively minor. See *ante*, at 359 n. 2.

to have charged the defendant with the greater offense. In most cases a court could not know why the harsher indictment was sought, and an inquiry into the prosecutor's motive would neither be indicated nor likely to be fruitful. In those cases, I would agree with the majority that the situation would not differ materially from one in which the higher charge was brought at the outset. See *ante,* at 360–361.

But this is not such a case. Here, any inquiry into the prosecutor's purpose is made unnecessary by his candid acknowledgment that he threatened to procure and in fact procured the habitual criminal indictment because of respondent's insistence on exercising his constitutional rights. We have stated in unequivocal terms, in discussing *United States* v. *Jackson,* 390 U. S. 570 (1968), and *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), that *"Jackson* and *Pearce* are clear and subsequent cases have not dulled their force: if the only objective of a state practice is to discourage the assertion of constitutional rights it is 'patently unconstitutional.' " *Chaffin* v. *Stynchcombe,* 412 U. S. 17, 32 n. 20 (1973). And in *Brady* v. *United States,* 397 U. S. 742 (1970), we drew a distinction between the situation there approved and the "situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty." *Id.,* at 751 n. 8.

The plea-bargaining process, as recognized by this Court, is essential to the functioning of the criminal-justice system. It normally affords genuine benefits to defendants as well as to society. And if the system is to work effectively, prosecutors must be accorded the widest discretion, within constitutional limits, in conducting bargaining. Cf. n. 2, *supra.* This is especially true when a defendant is represented by counsel and presumably is fully advised of his rights. Only in the most exceptional case should a court conclude that the scales of the bargaining are so unevenly balanced as to arouse suspicion. In this case, the prosecutor's actions denied respondent due

process because their admitted purpose was to discourage and then to penalize with unique severity his exercise of constitutional rights. Implementation of a strategy calculated solely to deter the exercise of constitutional rights is not a constitutionally permissible exercise of discretion. I would affirm the opinion of the Court of Appeals on the facts of this case.