No. 54,819

STATE OF KANSAS, *Appellee,* v. DANNY LEE ROBINSON, *Appellant.*

(662 P.2d 1275)

Opinion filed April 29, 1983.

*Craig Altenhofen,* of Harper & Hornbaker, Chartered, of Junction City, argued the cause and was on the brief for the appellant.

*Steven L. Opat,* county attorney, and *Robert T. Stephan,* attorney general, were on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action. Danny Lee Robinson entered pleas of guilty to aggravated robbery (K.S.A. 21-3427) and corruptly influencing a witness (K.S.A. 21-3806). Prior to sentencing Robinson sought to withdraw his pleas of guilty. The trial court denied his motion. This appeal followed.

Danny Robinson and an accomplice robbed a Junction City dope house to get money for Danny to pay off a debt. They took both drugs and money. The next day they were picked up by the police. Robinson offered the robbery victims drugs and money if they would not press charges.

Robinson was subsequently charged with five counts of aggravated robbery (K.S.A. 21-3427), one count of attempted aggravated robbery (K.S.A. 21-3301), one count of conspiracy to commit aggravated robbery (K.S.A. 21-3302), and one count of corruptly influencing a witness (K.S.A. 21-3806).

Pursuant to plea negotiations Robinson pleaded guilty to one count of aggravated robbery and one count of corruptly influencing a witness. The State agreed to (1) dismiss all remaining counts; (2) recommend the court impose concurrent sentences; and (3) not seek enhancement of the sentence under the habitual criminal act, K.S.A. 1982 Supp. 21-4504.

The trial court held a hearing on the plea agreement at which

time Robinson was exhaustively questioned regarding his understanding of the agreement and what would happen pursuant to it. He also signed a statement acknowledging that by entering into the plea agreement he was waiving his right to a jury trial. The trial court accepted Robinson's guilty pleas.

A presentence report was ordered and the matter was returned to the trial court for sentencing. At that time Robinson indicated he wished to change his guilty pleas. The trial court set the matter for hearing. At the hearing Robinson testified he felt he was "tricked" into the plea agreement and only entered into it because of the prosecutor's threat to invoke the habitual criminal act. Nevertheless, the trial court refused to allow withdrawal of the guilty pleas.

The sole issue on appeal is whether the habitual criminal act, K.S.A. 1982 Supp. 21-4504, is rendered unconstitutional because its use by the prosecutor is optional.

Appellant argues the trial court erred in not allowing him to withdraw his guilty pleas, claiming he pled guilty only because the prosecution threatened him with imposition of the habitual criminal act, K.S.A. 1982 Supp. 21-4504, if he did not. That statute provides, in pertinent part:

"If a defendant is convicted of a felony a second time, the punishment for which is confinement in the custody of the secretary of corrections, the trial judge may sentence the defendant as follows, upon motion of the prosecuting attorney."

Appellant argues the prosecution's threat to impose the habitual criminal act had a chilling effect on his assertion of his right to a jury trial. Moreover, he claims, the only purpose of making the imposition of the act dependent upon a motion of the prosecutor is to encourage guilty pleas and discourage the exercise of constitutional rights. Appellant contends this is "patently unconstitutional."

It should be noted the constitutionality of the habitual criminal act has been challenged many times and each time this court has rejected the attack. See, e.g., State v. Sully, 219 Kan. 222, 547 P.2d 344 (1976) (due process and equal protection); Churchill v. State, 216 Kan. 399, 532 P.2d 1070 (1975); Clinton v. State, 210 Kan. 327, 502 P.2d 852 (1972) (cruel and unusual punishment); Fairbanks v. State, 196 Kan. 650, 413 P.2d 985 (1966) (double jeopardy). See generally State v. Levier, 226 Kan. 461, 467-68,

601 P.2d 1116 (1979). Appellant's contention here is somewhat different. He argues the statute is unconstitutional because it acts to discourage assertion of a constitutional right.

The United States Supreme Court has dealt with this issue in a series of cases. *United States v. Jackson*, 390 U.S. 570, 20 L.Ed.2d 138, 88 S.Ct. 1209 (1968), involved the federal kidnaping act, 18 U.S.C. § 1201(a), which provided for punishment by death "if the verdict of the jury shall so recommend." Under the statute there was no procedure for imposing the death sentence upon a defendant who waived jury trial or who pleaded guilty. Thus a defendant who asserted his right to jury trial did so at the risk of death. The court struck this portion of the statute, holding:

"Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. [Citations omitted.] The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive. In this case the answer to that question is clear. The Congress can of course mitigate the severity of capital punishment. The goal of limiting the death penalty to cases in which a jury recommends it is an entirely legitimate one. But that goal can be achieved without penalizing those defendants who plead not guilty and demand jury trial." 390 U.S. at 582.

*Brady v. United States*, 397 U.S. 742, 25 L.Ed.2d 747, 90 S.Ct. 1463 (1970), also involved the federal kidnaping act. The defendant here was faced with the same choice as the defendant in *Jackson*, and after he learned a codefendant had confessed and would be available to testify against him at a jury trial, pled guilty. The court in *Brady*, however, held *Jackson* did not require invalidation of every guilty plea entered under section 1201(a) of the federal kidnaping act. Instead, the court said, the individual circumstances of the case should be examined to determine whether the waiver of the right to jury trial was knowing and intelligent. In other words, the statute might be unconstitutional but the guilty plea could still be allowed. With regard to the fact the defendant's guilty plea might have been based in part on the possibility of a heavier sentence after jury trial, the court stated:

"The State to some degree encourages pleas of guilty at every important step in the criminal process. For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not

worth the agony and expense to the defendant and his family. All these pleas of guilty are valid in spite of the State's responsibility for some of the factors motivating the pleas; the pleas are no more improperly compelled than is the decision by a defendant at the close of the State's evidence at trial that he must take the stand or face certain conviction." 397 U.S. at 750.

Thus, a guilty plea, "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged," is not necessarily compelled and invalid under the Fifth Amendment. 397 U.S. at 751.

In *Chaffin v. Stynchcombe,* 412 U.S. 17, 36 L.Ed.2d 714, 93 S.Ct. 1977 (1973), the petitioner was convicted of robbery and sentenced by the jury. He was later granted a new trial after which the jury imposed a harsher sentence. He argued the possibility of a heavier sentence on reconviction placed an impermissible chilling effect on his right to demand a jury trial on retrial. The court recognized, citing *Jackson,* "if the only objective of a state practice is to discourage the assertion of constitutional rights it is 'patently unconstitutional.' " 412 U.S. at 33, n. 20. Still, the court stated, *Jackson* did not hold the Constitution "forbids every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." 412 U.S. at 30. In light of the fact the criminal process is full of situations requiring the making of difficult judgments the real question is whether "compelling the election impairs to an appreciable extent any of the policies behind the rights involved." 412 U.S. at 32.

Finally, in *Bordenkircher v. Hayes,* 434 U.S. 357, 54 L.Ed.2d 604, 98 S.Ct. 663, *reh. denied* 435 U.S. 918 (1978), the defendant was indicted by a grand jury on a charge of uttering a forged instrument. During plea negotiations the prosecutor threatened if the defendant did not plead guilty he would return to the grand jury and seek an indictment under the Kentucky habitual criminal act, then Ky. Rev. Stat. § 431.190 (1973) (repealed 1975), which would subject the defendant to a harsher sentence. The defendant pled not guilty and was subsequently charged and convicted under the habitual criminal act. The defendant challenged the prosecutor's actions as a violation of due process. The Supreme Court, however, upheld the conviction. Much of the

court's reasoning was based on the nature of the plea bargaining process:

"We have recently had occasion to observe: 'Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned.' . . .

. . . . .

"To punish a person because he had done what the law plainly allows him to do is a due process violation of the most basic sort, [citation omitted], and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' [Citations omitted]. But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

"Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial. [Citation omitted.] Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. [Citation omitted.] Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial. [Citations omitted.]

"While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' — and permissible — 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' [Citation omitted.] It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." 434 U.S. at 361-64.

See also *Morrow v. State,* 219 Kan. 442, 445-46, 548 P.2d 727 (1976).

The foregoing cases readily answer appellant's claim. The mere fact the Kansas habitual criminal act gives the prosecutor authority to move the trial court to invoke its provisions does not make it "patently unconstitutional." Indeed, the statute itself has no chilling effect whatsoever on the defendant's assertion of his constitutional rights. It is only when the prosecutor uses his discretion and threatens to invoke the act that some chilling effect may occur. As the Supreme Court has stated, however, this is merely part of the plea bargaining process.

Further, the prosecutor's discretion regarding whether or not to ask the court to invoke the provisions of the act does not present a problem. The prosecutor's discretion under the act has previously been upheld in the face of constitutional attack. See *State v. Sully,* 219 Kan. at 230; *State v. Collins,* 215 Kan. 789, 528 P.2d 1221 (1974). In fact, this is essentially the same type of discretion the prosecutor employs in deciding whether or not to prosecute and what charges to file. *Bordenkircher v. Hayes,* 434 U.S. at 364.

Since the act itself does not work a violation of a defendant's constitutional rights this appeal must fail unless appellant can show that under the circumstances of this case his initial guilty pleas were compelled. An examination of the transcript clearly shows this was not the case. The trial court took special care to insure Mr. Robinson's pleas were made knowingly and intelligently. There is no ground for reversal.

The judgment is affirmed.