Shearing, J.,
concurring:
I agree with the majority that Schoels’ judgment of conviction should be affirmed. I write separately to address the allegations in the dissenting opinion.
There is no evidence for the dissenting justice’s allegation that “prosecutors have, nonetheless, adopted the common practice of seeking the death penalty, not because they believe the case is truly a capital case but because they believe that seeking the death penalty will give them a tactical advantage.” Obviously, the dissenting justice views the case differently than either the prosecution or, apparently, the jury in this case. This court’s review of cases is limited to the evidence in the record. There is no evidence *991 that the prosecutor applied an inappropriate standard in this case. The fact that the Nevada Supreme Court Task Force for the Study of Racial and Economic Bias in the Justice System recommended use of statewide standards for prosecutors’ decisions regarding whether to seek the death penalty does not imply that inappropriate standards were used in this case.
I agree that the race of the defendant and the victim should not play any role in determining whether the death penalty should be sought. I also agree that some of the findings of the Task Force were disturbing, and every effort should be made to eliminate racial bias wherever it may exist in our system of justice. However, it is very important to both defendants and our society that each individual case be decided on the evidence in that case. The philosophy and experience of a reviewing justice may influence a ruling, but the decision must always be based on the evidence in the record.
Furthermore, this court must respect the doctrine of separation of powers. The judiciary may not invade the legitimate function of the prosecutor. Charging decisions are primarily a matter of discretion for the prosecution, which represents the executive branch of government. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). In United States v. Cox, 342 F.2d 167, 171 (5th Cir.), cert. denied, 381 U.S. 935 (1965), the court stated:
It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.
Article 3, section 1 of the Constitution of the State of Nevada also provides for similar separation of powers.
The applicable principles are elaborated in United States v. Miller, 722 F.2d 562, 565 (9th Cir. 1983) as follows:
[Separation of powers requires that the judiciary remain independent of executive affairs. Charging decisions are generally within the prosecutor’s exclusive domain. Prosecutors — representatives of the executive branch of the government — are not mere servants of the judiciary. The tradition of prosecutorial independence is recognized both by case law, and the Federal Rules of Criminal Procedure.
. . . Generally, courts should be wary of second-guessing prosecutorial choices. Courts do not know which charges are best initiated at which time, which allocation of prosecutor-ial resources is most efficient, or the relative strengths of various cases and charges. Categorical limitations on charge bargains may force prosecutors to bring charges they ordinarily would not, or to maintain charges they would ordinar *992 ily dismiss as on-going investigations uncover more information.
(Citations omitted.)
Certainly it is the duty of the courts to enforce the due process limitations on arbitrary or discriminatory prosecution. The community benefits if standards for prosecutorial discretion are adopted and followed to protect against abuse of discretion and disparate treatment of minorities or the less powerful. However, judicial intervention should be confined to review of the records that are brought before the courts.