NOT DESIGNATED FOR PUBLICATION

No. 126,018

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH DANIEL MILLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Submitted without oral argument. Opinion filed August 9, 2024. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: Kenneth Daniel Miller appeals the district court's denial of his presentence motion to withdraw his plea. After the State charged Miller with many crimes involving drug possession and distribution, he pleaded guilty in exchange for the State's agreement not to file other charges under the Kansas Racketeer Influenced and Corrupt Organization (RICO) Act and to recommend a mitigated sentence. Before being sentenced, while on bond, Miller absconded for several months. Upon his arrest, the State sought to be relieved of its obligations under the plea agreement because of Miller's commission of new crimes. Miller sought to withdraw his plea, but the district court denied the motion, finding he failed to establish good cause to do so.

1

On appeal, Miller contends: (1) The district court committed an error of law in ruling on his motion to withdraw his plea by finding it was the State's "job" to pressure defendants to plead guilty; (2) the State committed prosecutorial error by arguing an improper standard for Miller to show good cause to withdraw his plea; and (3) the State presented insufficient evidence to prove that Miller had committed new crimes and should have been required to honor the plea agreement. After thoroughly reviewing the record, we find no reversible error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2020, the State charged Miller with eight counts of possession and sale of controlled substances, two counts of criminal possession of a firearm, one count of theft or, alternatively, possession of stolen property, and two counts of aggravated endangerment of a child. The facts supporting the charges are not relevant to this appeal.

On June 2, 2021, Miller waived his right to a preliminary hearing and pleaded guilty under an agreement with the State. Under the agreement, Miller pleaded guilty to all but two of the counts against him, and the State agreed not to file charges under the Kansas RICO Act or additional charges related to the manufacture of methamphetamine and possession of fentanyl. The State also agreed to recommend the mitigated sentence for each of the convictions and would refrain from filing any request for an upward departure. The parties agreed that if Miller committed any crime "between the date of the offer which was May 11, 2021, and sentencing the State will be released from its obligations under the agreement and [Miller] will not file a motion to withdraw the plea." The district court directly addressed Miller, asking whether the State had fully explained the agreement and whether he fully understood its terms, and Miller replied, "Yes, sir."

The district court scheduled sentencing for October 29, 2021, but Miller—who had posted a $62,500 bond—failed to appear. The district court forfeited Miller's bond

2

and issued a bench warrant. The State filed a motion for judgment on the bond, and after the bondsman failed to locate Miller after several months, the district court granted the judgment. Miller was not arrested on the bench warrant until May 10, 2022. Before he could be sentenced, the State filed two new cases against him. The State charged Miller with an offender registration violation in case No. 21CR870. The State also charged him with felony fleeing and eluding and other crimes related to the possession and distribution of methamphetamine, oxycodone, alprazolam, and amphetamine in case No. 22CR125.

On July 8, 2022, Miller moved to withdraw his plea. He argued that good cause existed to withdraw his plea because his counsel was ineffective for failing to advise him there could have been grounds for a motion to suppress the evidence. He also asserted that his plea was involuntary and that he was pressured into making it. Miller's attorney, David Harger, moved to withdraw based on the conflict created by Miller's claims. The State did not argue that the plea agreement specified that Miller could not move to withdraw his plea. The district court appointed new counsel to represent Miller.

The district court held a hearing on Miller's motion to withdraw his plea on September 1, 2022. Miller did not testify at the hearing, but he called Harger as a witness. Harger recalled the extensive plea negotiations he conducted with the State on Miller's behalf and noted that he had fully advised Miller about the potential RICO charges the State could file, which it would agree to forgo as part of the deal. Harger also presented an email from Miller in which he stated that he wished to accept the State's offer and the notes from his meeting advising Miller of the implications of entering the plea deal, including the rights he would be waiving. Ultimately, Harger believed that Miller likely had some "buyer's remorse" about accepting the plea deal.

After presenting the evidence, Miller's new counsel argued that Miller believed he had not been adequately informed of his potential defenses and that he had been coerced

3

by the State's threat of filing more charges. The State disagreed, arguing Miller could not establish good cause to withdraw his plea. The district court denied Miller's motion, finding his plea was knowingly, intelligently, and voluntarily entered, and explaining there was no sign that Miller had been coerced into entering it. At the end of the hearing the State requested more time to present evidence of whether it was still bound by its original plea agreement in light of the new crimes Miller was charged with committing.

The district court held a sentencing hearing on November 22, 2022. Miller presented evidence to support his motion for a downward departure, during which he admitted failing to appear for sentencing and not turning himself in within 30 days. Miller also conceded that he knew that his commission of the new crimes meant that the State would not be bound by the initial plea agreement. For its part, the State called a detective to recall his interactions with Miller and asked the district court to take notice of its own records of Miller's failure to appear and his being bound over in the new case for drug possession and distribution. The district court noted Miller's failure to appear at the original sentencing and the preliminary hearing in case No. 22CR125, which had been held two months earlier, recalled that he had bound Miller over for trial in that case, and found that the State was relieved of its obligations under the plea agreement. The State argued for the district court to depart and sentence Miller to aggravated, consecutive sentences. The district court denied both parties' departure motions and sentenced Miller to 324 months' imprisonment. Miller timely appealed the district court's judgment.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING MILLER'S MOTION TO WITHDRAW HIS PLEA?

Miller claims the district court committed an error of law in denying his motion to withdraw his plea because the judge made an improper comment about the State's role in pressuring defendants into giving up their constitutional rights during the plea-bargaining process. He contends that the judge's statement evinces a misapplication of the *Edgar*

4

factor of coercion and mandates reversal. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The State asserts that the district court's comment did not affect its ruling, that the district court used the proper legal framework, and that Miller failed to present any evidence that he was coerced, mistreated, or unfairly taken advantage of.

When a defendant moves to withdraw their plea before sentencing, the district court has discretion to grant the motion for "good cause shown." K.S.A. 22-3210(d)(1). In determining whether a defendant has shown good cause, district courts generally look to three factors, commonly referred to as the *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). The Kansas Supreme Court has instructed that these factors need not apply in every case and that they should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

Because a district court is afforded discretion in ruling on a plea withdrawal motion, an appellate court reviews its decision for an abuse of discretion. *State v. White*, 289 Kan. 279, 284, 211 P.3d 805 (2009). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). To the extent the district court's exercise of discretion is informed by findings of fact, this court will not reweigh evidence or reassess witness credibility. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). And Miller bears the burden of showing the district court abused its discretion. See 307 Kan. at 503.

At the hearing on Miller's plea withdrawal motion, the district court ruled from the bench. After explaining that the evidence supported that Miller understood the terms and

5

consequences of accepting the plea, the judge then addressed the quality of representation Miller received and Miller's allegation that he had been coerced during the plea process:

> "The testimony of [Miller's plea counsel] establishes that not only was Mr. Miller adequately advised but he was exceptionally well advised by [his counsel] and I truly believe [counsel] when he says that he did nothing to pressure Mr. Miller. *Now, Mr. Miller probably felt pressure that, you know, from [the State]. That's [a prosecutor's] job. That's what he's supposed to do. We make sure that it's done in open court and so we know what the pressure was. When I was a prosecutor many years ago, probably before Mr. Miller was born and I consider[ed] it my job to pressure people into giving up their constitutional rights. That's how we do it. That's the job, but other than the possibility of more serious consequences for Mr. Miller if he did not accept the plea there was no other threat or anything like that.* Nobody is going to go beat him up or [his counsel] wasn't going to withdraw as his attorney or anything like that. It was just that he considered, Mr. Miller considered the pros and cons of the plea offer and the pros would be that it should reduce his exposure and the con would be that he would end up with conviction of some serious offenses, so there's no pressure. There's no improper advice. The plea was knowingly, intelligently, voluntarily made." (Emphasis added.)

On appeal, Miller argues the district court's comment about a prosecutor's "job" shows that it used an erroneous legal standard when it assessed whether he was coerced into entering his plea. Miller's argument fails for two reasons: First, the district court's comment, while inartful and perhaps an overstatement of a prosecutor's role in the criminal justice system, touches on a central feature of the plea-bargaining process that has been recognized by the United States Supreme Court—i.e., the State's interest in persuading defendants to forgo their various trial rights and enter guilty pleas. See *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). Second, Miller's argument focuses entirely on the district court's comment and fails to point to any specific evidence that the State engaged in any coercion during his case.

Prosecutors are afforded wide latitude to conduct the State's case and attempt to obtain convictions, but they must do so in a way that does not offend the defendant's constitutional right to a fair trial. See, e.g., *State v. Sherman*, 305 Kan. 88, 98, 109, 378 P.3d 1060 (2016). While it would be "'patently unconstitutional'" for a prosecutor "to pursue a course of action whose objective is to penalize a person's reliance on his legal rights," because of the "'give-and-take'" nature of plea negotiations, there is "no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher*, 434 U.S. at 363. In other words, the very nature of plea bargaining inevitably involves the State applying some amount of pressure on the defendant, whether in the form of promises to recommend a particular sentence or the possibility of the filing of additional legitimate charges if the defendant does not cooperate. As the *Bordenkircher* Court more articulately explained:

> "Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.
>
> "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty. [Citations omitted.]" 434 U.S. at 363-64.

Ultimately, the *Bordenkircher* Court found that although there are limits to a prosecutor's discretion, the State is permitted to "openly present[] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." 434 U.S. at 365. When a prosecutor indicates that a defendant's failure to accept a plea offer may result in the State filing additional, more serious charges—which would be supported by the law and the evidence in the case—there is no due process violation. See *State v. Robinson*, 233 Kan. 384, 386-88, 662 P.2d 1275 (1983).

While the district court's comment that it is the State's job during the plea process to pressure defendants to give up their constitutional rights was perhaps a crass assessment of the inevitable imbalance of bargaining power between the parties, it is not a legally erroneous statement. As the United States Supreme Court has recognized, it is simply an inherent feature of our justice system—the State has a legitimate interest in persuading defendants to relinquish their right to plead not guilty, and prosecutors may use the threat of a potentially longer sentences or more serious charges being filed during plea negotiations, so long as they are supported by the law and the evidence. Thus, the district court did not commit an error of law by noting that the only pressure Miller appeared to face was the typical possibility that the State would have argued for longer sentences and potentially could have filed other charges if he refused to accept the plea agreement.

Beyond Miller's argument that the district court committed an error of law by making an improper comment about the State's role in pressuring defendants to plead guilty, he has not pointed to any evidence that would support his conclusory claim that he was coerced into entering his plea. The record does not support a claim that Miller's plea was involuntary. Indeed, the evidence established that Miller understood the terms of the plea agreement and that his plea was knowingly and intelligently made. The district court's comment about the duty of a prosecutor is not a reversible error of law, nor does it appear that the judge's statement affected the denial of Miller's motion. Based on the

8

record presented for our review, we reject Miller's claim that the district court abused its discretion in denying his motion to withdraw his plea.

## DID THE STATE COMMIT PROSECUTORIAL ERROR BY MISSTATING THE LAW DURING THE HEARING ON MILLER'S MOTION TO WITHDRAW HIS PLEA?

Next, Miller argues the State committed prosecutorial error at the hearing on his motion to withdraw his plea because it "argued the wrong legal standard" about whether he was represented by competent counsel during his plea negotiations. The State argues there was no prosecutorial error and, alternatively, any error was harmless.

This court applies a two-step analysis when evaluating claims of prosecutorial error, looking first to whether any error occurred and, if so, then determining whether that error prejudiced the defendant. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022). The standards for evaluating these two prongs are well-established:

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

As stated earlier, in determining whether a defendant has shown good cause to withdraw a plea before sentencing, district courts look to three factors, commonly

referred to as the *Edgar* factors, the first of which is whether the defendant was represented by competent counsel. *Frazier*, 311 Kan. at 381. The Kansas Supreme Court has ruled that mere lackluster advocacy by counsel may be sufficient to support the first *Edgar* factor and thus statutory good cause for a presentence withdrawal of a plea. *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). But as Miller points out, during the State's argument at the hearing on the motion to withdraw plea, the prosecutor argued that Miller was required to show both ineffective assistance of counsel and prejudice, the standard for constitutional ineffective assistance of counsel claims, to prove the first *Edgar* factor. Miller is correct that this is the standard for a postsentence motion to withdraw a plea, not a presentence motion. A prosecutor commits error by misstating the law. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021).

Because Miller has established that the prosecutor misstated the law, we must proceed to consider whether that error prejudiced Miller. When considering whether a prosecutor's error is harmless, appellate courts look to whether the State can show beyond a reasonable doubt that the error complained of did not affect the ultimate outcome. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

Before proceeding with our prejudice analysis, Miller argues that a district court's incorrect application of the law equates to an abuse of discretion and requires automatic reversal for application of the correct law, citing *Bilbrey*, 317 Kan. at 65-66, and *State v. Herring*, 312 Kan. 192, Syl. ¶ 2, 474 P.3d 285 (2020). Miller argues the error here cannot be harmless. But this argument misses the point. The mere fact that the State argued the wrong legal standard at the motion hearing does not mean that the district court applied the wrong standard. Miller claims *prosecutorial error*, not district court error, so we must examine prejudice under the second prong of a prosecutorial error claim.

While the prosecutor referred to a higher standard of ineffectiveness when discussing the level of representation Miller received, nothing suggests that the district

court applied the wrong standard when it denied Miller's motion to withdraw his plea. As a starting point, unlike a typical claim of prosecutorial error, the State's misstatement of the law occurred at a motion hearing—not in front of a jury during a trial. As such, there is no real possibility that the prosecutor's comment affected the ultimate denial of Miller's motion unless it appears that the district court was somehow swayed into applying the wrong standard. The record does not support that it did, nor does it substantiate Miller's claim that he received lackluster advocacy.

Miller did not testify at the hearing on his plea withdrawal motion; his plea counsel, Harger, was the only witness. Harger testified that he advised Miller about the rights he would be waiving under the plea agreement and that Miller was satisfied with the plea offer. The record shows that the district court thought highly of the level of representation Miller received from Harger. In denying the plea withdrawal motion, the judge noted, "[N]ot only was Mr. Miller adequately advised *but he was exceptionally well advised* by [Harger] and I truly believe [Harger] when he says that he did nothing to pressure Mr. Miller. . . . There's no improper advice." (Emphasis added.) While Miller is correct that he was merely required to show that he received lackluster advocacy, not constitutionally deficient representation, he did not establish *any* deficiency in Harger's performance. Harger's testimony supports that he properly advised Miller and adequately advocated on his behalf during plea negotiations. Underscoring this point, at sentencing, Miller himself admitted that Harger had worked diligently on his behalf "to come up to a plea deal that everyone was happy with and I appreciated."

In short, the record supports the district court's finding that no evidence supported Miller's assertion that he did not have competent counsel during his plea negotiations. And there is no suggestion that the district court followed an incorrect legal standard when it denied Miller's motion. Because no evidence supports that Miller received substandard assistance of counsel, there is no real possibility that the prosecutor's

11

misstatement of the law affected the denial of Miller's motion. We find beyond a reasonable doubt that any prosecutorial error was harmless.

### Did the State Provide Sufficient Proof that Miller Violated the Terms of the Plea Agreement?

Finally, Miller asserts that the State failed to establish that Miller committed new crimes while awaiting sentencing and, as such, the State was bound by the terms of the original plea agreement. The State disagrees, noting (1) that Miller admitted committing the crime of aggravated failure to appear, and (2) that the district court properly took notice of its own records showing that Miller was bound over for trial on new felony charges that were filed against Miller after he entered his plea.

"'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013). And "[a] defendant is denied due process if the State fails to fulfill a promise in the plea agreement." *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015). Whether the State or the defendant breached a plea agreement presents a question of law over which appellate courts have unlimited review. 302 Kan. at 116.

The parties' original plea agreement stated that the State would recommend the mitigated sentence for each of Miller's convictions. But it also specified that the State would be released from its obligations under the agreement if Miller committed any new crime between the date of the plea offer and the sentencing. Miller later failed to appear at his original sentencing hearing; his bond was forfeited and a bench warrant was issued for his arrest. The district court later granted judgment on the bond forfeiture, and Miller was not arrested on the bench warrant for several months. The State filed two new cases

against Miller including many new charges, and Miller was bound over for trial on the new charges after the district court held a preliminary hearing.

At Miller's sentencing hearing on November 22, 2022, Miller took the stand and admitted that he had been charged in a new case but that he had entered a not guilty plea. But Miller admitted failing to appear for his original sentencing and not turning himself in for several months, and he apologized to the court, the State, and his attorney. Under K.S.A. 21-5915(b): "Aggravated failure to appear is knowingly incurring a forfeiture of an appearance bond and failing to surrender oneself within 30 days following the date of such forfeiture by one who is charged with a felony and has been released on bond for appearance before any court of this state." Miller's own statement established that he committed the crime of aggravated failure to appear after the original plea offer. This new crime released the State from its obligations under the plea agreement. We need not address whether the State provided sufficient proof that Miller committed other crimes that violated the terms of the plea agreement. We conclude the district court did not err in finding that the State was relieved of its obligations under the plea agreement.

Affirmed.

13