The **PEOPLE** of the State of Colorado,
Plaintiff-Appellee,

v.

Curtis **TALLEY** a/k/a Curtis **Jackson**,
Defendant-Appellant.

No. 82CA0902.

Colorado Court of Appeals,
Division II.

Sept. 8, 1983.

Rehearing Denied Oct. 13, 1983.

Certiorari Denied Feb. 27, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Marks & Olom, Jonathan L. Olom, Denver, for defendant-appellant.

STERNBERG, Judge.

Following a jury trial, the defendant, Curtis Talley, was convicted of two counts of felony theft and five counts of being an habitual criminal. He appeals and we affirm.

Talley's felony conviction was based on three short checks he wrote to a Firestone tire store. However, previously, on August 6, 1981, he had been charged with four counts of felony theft based upon four short checks written to Downing's Appliance Store. At the time of the preliminary hearing on the Downing's charges on August 31, 1981, the prosecutor engaged in plea negotiations with Talley's attorney, the public defender. The prosecutor suggested Talley enter a plea of guilty to one of the four pending felony counts with a stipulated sentence of eight years imprisonment, based on extraordinary aggravating circumstances. The prosecutor indicated there were two additional cases pending against defendant (neither involved the Firestone checks) plus six habitual criminal charges, and that he would file two of the habitual criminal charges if Talley chose to reject the plea bargain.

Believing this to be a reasonable resolution of the case, the public defender obtained three continuances, during which time unsuccessful efforts were made to persuade Talley to accept the plea bargain. The public defender eventually withdrew from the case.

New counsel was appointed for Talley, and the same plea bargain was offered. The prosecutor again told counsel he would file the habitual criminal counts if the offer was refused. The plea bargain was refused and on November 10, 1981, Talley pleaded not guilty to the four counts of felony theft. Trial was set for January 13, 1982. The prosecutor then began to compile material to document the habitual criminal charges and on December 28, 1981, moved to add the habitual criminal charges. The judge being on vacation, at Talley's request, the hearing on the motion was set

for January 5, 1982, eight days before the trial date. At the January 5 hearing, Talley objected to the motion as untimely. The court agreed and denied the motion to add habitual criminal charges.

The prosecutor then reviewed the other pending cases involving Talley and decided to prosecute the case involving the Firestone checks. Those charges were filed, and on January 6, 1982, Talley was arrested.

Subsequently, because of docketing problems, on its own motion, the court continued the Downing's case to February 16, 1982. The prosecutor then filed the two counts of felony theft involving the Firestone checks against the defendant. Six habitual criminal charges were later added to the case. The prosecutor indicated that, although he had filed all six habitual criminal charges against defendant, he intended to pursue only two of the six for purposes of sentencing.

On April 5, 1982, the case involving the Firestone checks was tried resulting in convictions on both counts of felony theft and five counts of being an habitual criminal. The People asked the court to impose sentence on only two of the habitual criminal counts, and the court did so. The Downing's checks case was dismissed.

## I.

■ We first address the issue whether the prosecutor acted vindictively by filing the instant case, thus depriving Talley of his constitutional right to due process. We find no deprivation of due process.

Talley asserts the prosecution was aware of the Firestone case well before it was filed and only decided to file the case after its motion to add the habitual criminal charges to the Downing's case was denied. Thus, he argues, the Firestone case was used as a vehicle to punish him for exercising his right to go to trial, and for contesting the habitual criminal charges.

We conclude that this case falls squarely within the analysis of *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). There, Hayes was indicted by a grand jury for uttering a forged instrument. He was advised that if he pleaded guilty, the prosecutor would recommend a sentence of five years imprisonment. If Hayes did not plead guilty, the prosecutor warned he would seek a grand jury indictment under the Kentucky Habitual Criminal Act, which would subject defendant to a mandatory sentence of life imprisonment because he had two prior felony convictions. Hayes pleaded not guilty, the additional indictment was sought and obtained, he was convicted and sentenced to life imprisonment, and he appealed. In words appropriate here, the Supreme Court held the prosecutor's conduct "no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution" and therefore was not in violation of the due process clause of the Fourteenth Amendment.

The *Bordenkircher* court noted that, while punishing someone for doing something the law plainly permits, is a "due process violation of the most basic sort .... [I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecutor's offer." *Bordenkircher, supra.* In our view, this is what occurred here. *See also North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

Talley was told at the preliminary hearing on August 31, 1981, of the terms of the plea bargain. It was explained that if he chose to plead not guilty, habitual criminal charges would be filed against him. Despite repeated admonitions of his attorney to accept the bargain, he chose to plead not guilty. Therefore, Talley cannot complain that he was not openly advised of the possibility that habitual criminal charges would be filed, or that he was not given an opportunity freely to accept or reject the prosecutor's offer. *Bordenkircher, supra.* We conclude that this case was not filed to punish Talley for refusing to accept the plea bargain, but rather to provide a means

for the prosecution to add the habitual criminal charges of which the defendant was already fully aware.

By trying the Firestone case first, and then dismissing the Downing's case upon obtaining a conviction, the result achieved was that intended from the outset: a conviction of felony theft (but on two counts instead of four) and a conviction of being an habitual criminal.

*Hampton v. District Court*, 199 Colo. 104, 605 P.2d 54 (1980), relied on by Talley, does not require a result different than reached here. There, a plea bargaining situation was not involved. Arraignment and trial had been delayed several times on motions of the People. Just before trial, the People filed another motion to vacate the trial date. When it was denied, the People moved to file habitual criminal charges. Significantly, Hampton had not previously been told of the possibility of such charges being filed.

Hampton objected and moved for dismissal of the additional counts. He charged the prosecutor's motive in filing the additional counts was to place him in a position of having either to request a continuance, thereby waiving his right to a speedy trial, or to proceed to trial unprepared to defend on the habitual counts. The Supreme Court held that Hampton had established a *prima facie* case of prosecutorial bad faith in adding the charges and that, therefore, the prosecution had the obligation to come forth with evidence to rebut it.

In contrast, here, Talley was fully advised from the outset of the prosecutor's intention to file the habitual criminal charges if he chose to plead not guilty. His not guilty plea was voluntary and he was not caught by surprise when the additional charges were filed. Thus, there was no *prima facie* case of prosecutorial bad faith in adding the charges.

## II.

■ The next contention, that the court erred in permitting reference to an alias during trial, is without merit.

Use of defendant's alias "Curtis Talley," was relevant to prove prior convictions obtained under that name and for sentencing as an habitual criminal. Hence, defendant's use of the alias was clearly relevant to the crime charged, *i.e.*, being an habitual criminal. *People v. De Herrera*, 647 P.2d 241 (Colo.App.1981), *cert. granted* June 21, 1982. Also, Talley insisted to the trial court that both names were his "real" names.

## III.

We also reject Talley's final contention that the trial court erred in not granting a mistrial when the prosecutor asked a question which suggested prior criminal conduct by the defendant.

On cross-examination of a police officer who was a handwriting expert, defense counsel elicited the statement that the signature on the checks in question appeared to be written under normal conditions without indication of nervousness, tension, or the influence of drugs or alcohol. On redirect, the witness was asked if he had found that:

> "persons who have some experience in writing checks, bad checks, are not necessarily nervous and don't exhibit the nervous characteristics in their handwriting?"

Talley objected and moved for a mistrial. The objection was sustained but the motion was overruled. No curative instruction was requested and none was given.

■ Granting of a motion for mistrial is within the discretion of a trial court. *Hamrick v. People*, 624 P.2d 1320 (Colo. 1981). Only where substantial prejudice to a defendant is demonstrated should a mistrial be granted. *Hamrick, supra.* A trial court's ruling will not be disturbed unless it is apparent that it abused its discretion. *People v. Elliston*, 181 Colo. 118, 508 P.2d 379 (1973). There was no such abuse of discretion here.

The judgment is affirmed.

ENOCH, C.J., concurs.

BABCOCK, J., dissents.

BABCOCK, Judge, dissenting.

I respectfully dissent from Part I of the majority opinion.

The Downing's case was filed on August 6, 1981, and was set for trial on January 13, 1982. The defendant refused consistently the prosecution's offer to dismiss the other pending felony counts and to refrain from filing the habitual criminal counts in exchange for his plea of guilty to one pending felony count with a stipulated aggravated sentence. On the eve of trial, the prosecution moved to amend the information in the Downing's case by adding six habitual criminal counts. The prosecution conceded that the same habitual criminal counts had been charged in a previous case in 1977. The trial court denied the motion, finding that the prosecution had available the information concerning the habitual criminal counts from the date of arraignment. The next day the defendant was arrested on the Firestone check charges. The same six habitual criminal counts were later added to these charges.

When both the Downing's and the Firestone cases were called for trial on April 5, 1982, the defendant moved to dismiss the Firestone case on the ground of vindictive prosecution. In addition to the record in each case, the defendant's motion was supported by the testimony of the detective who had investigated these cases and his offense report concerning the Firestone case. The defendant established that: 1) When the Downing's case was filed the prosecution had already received the detective's report concerning the Firestone case; 2) at that time the prosecution refused to file charges with respect to the Firestone case; and 3) the Firestone case was one of several others and was reflected as "exceptionally cleared" and "use as similar." Cross-examination was minimal and no rebuttal was presented by the prosecution. The trial court summarily denied defendant's motion.

Where the defendant has established a *prima facie* case of prosecutorial bad faith in adding habitual criminal charges, the prosecution must come forth with evidence to rebut the *prima facie* case made by the defendant or risk an adverse decision. *Hampton v. District Court*, 199 Colo. 104, 605 P.2d 54 (1980).

Here, as in *Hampton*, the defendant made a *prima facie* showing of prosecutorial bad faith: The prosecution's unnecessary delay in seeking to file the habitual criminal counts in the Downing's case resulted in the defendant being forced to choose between the exercise of his right to speedy trial and accepting the prosecution's plea offer. When the defendant chose the former and the trial court denied the prosecution's motion to amend, the prosecution went to the well, drew another underlying substantive charge (the Firestone checks charge), and used that charge as a vehicle to do indirectly what the trial court ruled it could not do directly. Thus, the defendant was punished for doing that which the law plainly permits. *See Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The defendant was no longer free to accept or reject the prosecutor's offer. Thus, in my view, this was no longer a plea bargaining situation. *See Bordenkircher v. Hayes, supra.*

Because the prosecution failed to rebut the defendant's *prima facie* case, I would reverse the defendant's conviction upon the habitual criminal charges and remand the cause for resentencing upon his conviction of two counts of felony theft.