UNITED STATES of America

v.

Larry S. JORDAN, Defendant.

Crim. No. 90–295 (CRR).

United States District Court,
District of Columbia.

Feb. 28, 1994.

As Amended March 21, 1994.

John M. Facciola, Asst. U.S. Atty., Washington, DC, for U.S.

Patrick M. Donahue, Washington, DC, for defendant.

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court is the Defendant, an admitted drug addict[1], convicted drug dealer[2], and former officer of the District of Columbia Department of Corrections who has made a Motion to Modify, Vacate or Set Aside his sentence pursuant to 28 U.S.C. § 2255. The Defendant was video and audiotaped possessing with the intent to distribute

1. The Defendant admitted using cocaine base and powder to the probation officer in the officer's Presentence Investigation Report. *See* Report at 4, 9. The Defendant also admitted in open court at a four (4) hour hearing on February 17, 1994, that he has used drugs and has suffered from drug addiction.

2. In addition to the drug dealing conviction for which he is now serving time, the Defendant pled guilty to and was convicted of possession of

a significant quantity of cocaine base outside of the D.C. Jail while he was a D.C. corrections officer.

Defense counsel argues that the Government acted either in an arbitrary fashion or in bad faith towards the Defendant when it refused to file a chapter 5K1 departure letter as a result of a plea agreement. The Assistant United States Attorney argues that the Government did not make any specific promise to file a 18 U.S.C. § 3553(e) Motion or Chapter 5K1 letter under the Sentencing Guidelines at the time of the Defendant's sentencing. It also asserts that it had only offered the Defendant an "opportunity to cooperate" and provide any substantial assistance to the Government which the Defendant did not provide.

The Plea Agreement was outlined by the parties at a hearing on the Defendant's Plea as follows:

MR. RUDASILL: ... My client is seeking to enter into cooperation with the government under 3553(e). There may be some necessity to extend the sentencing date because of his cooperation.

THE COURT: That's perfectly all right. All you have to do is notify my clerk, Mr. Burgess.

MR. KRUGER: "Your honor, I need to state for the record to be perfectly clear to the Court that while the Government is listening to Mr. Jordan, *We've made no representations whatsoever as to whether any request might be made to our Departure Committee regarding substantial assistance,* but we are listening to that at this time (emphasis added)." Bench Conference ("BC") at the Defendant's Plea, p. 2; unsealed by Order of the Court dated February 15, 1991.

Nothing in 18 U.S.C. § 3553(e) or Chapter 5K1 of the Sentencing Guidelines authorizes a Defendant to bring a Departure Motion. This discretion and authority rest solely with the Government, the Departure Committee, and the Court. However, the Court agreed to hear the Defendant's motion on the basis of the Defendant's assertions that the Government was acting arbitrarily, invidiously, or in bad faith when it refused to bring a departure motion on his behalf. At a four (4) hour hearing on February 17, 1994, the Court gave the Defendant a full and complete opportunity to be heard. At that hearing, however, the Defendant offered not one scintilla of evidence that the Government acted arbitrarily, invidiously or in bad faith in refusing to file a departure motion. Therefore, the Court finds that the Defendant has not proved that the prosecutor's decision not to file a departure Motion was an arbitrary, invidious, or bad faith decision and will deny the Defendant's Motion.

## I. BACKGROUND

The facts which give rise to the Defendant's Motion center around a plea agreement entered into between the Government and the Defendant after the Defendant was charged with possessing with the intent to distribute 5 or more grams of a mixture or substance containing detectable amounts of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). The Defendant is a former employee of the D.C. Department of Corrections (DOC) who was caught in a federal sting operation to rid the DOC of employees who dealt in drugs. On July 20, 1990, the Defendant entered a plea of not guilty to the charges brought against him, and a trial date was set. On September

cocaine by the United States District Court for the District of Maryland prior to being employed as an officer at the District of Columbia Department of Corrections. *See* Defendant's Presentence Investigation Report, at 5. The circumstances surrounding that conviction are related on the Presentence Investigation Report as follows:

"The details of this offense reveal that on December 4, 1981, a postal inspector working in an undercover capacity, posing as an employee of the Bulk Mail Center, purchased one-half ounce of marijuana for $25 from defendant Jordan. On December 11, 1981, a cocaine transaction was arranged between the undercover officer and Michelle Jordan (the defendant's wife) to purchase cocaine from the defendant Jordan. The officer followed Michelle Jordan home, where he purchased one gram of cocaine from defendant Jordan for $100. He was later arrested and pled guilty on April 27, 1982. The U.S. Probation Officer noted that a Hearing on Violation of Probation was held on June 23, 1983, for failure to participate in a drug treatment program. However, the Court decided to terminate his supervision unsuccessfully, due to his failure to address his drug problem." *Id.,* at 5–6.

14, 1990, however, after defense counsel had notified the Court of the possibility of a disposition, the Defendant withdrew his plea of not guilty and formally entered a guilty plea.

After the Court conducted an extensive Rule 11 inquiry, the prosecutor advised the Court that, in exchange for the Defendant's guilty plea, the Government agreed not to oppose a two-level "acceptance of personal responsibility" reduction under the Sentencing Guidelines and not to oppose a sentence at the low end of the guideline range. The Court accepted the Defendant's plea.

At the conclusion of the proceedings, defense counsel and the Prosecutor approached the bench and thence informed the Court of the possibility that sentencing may need to be postponed if the Defendant cooperates with the Government. However, the government "made no representations whatsoever as to whether any request might be made to our Departure Committee regarding substantial assistance." BC at 2.

The sentencing date was originally set for December 3, 1990, but the Court granted the Defendant's unopposed Motion to postpone it until January 3, 1991, because factors not related to sentencing could not be determined by December 3. On or about December 19, 1990, the Defendant was informed that the Government would not recommend a departure.

The Defendant moved this Court under Federal Rule of Criminal Procedure 32(d) to set aside his guilty plea on the basis of a government breach of a plea agreement. In a published opinion, the Court denied the Defendant's motion. *United states v. Larry S. Jordan,* 759 F.Supp. 902 (D.D.C.1991). The Defendant then made the present § 2255 motion. The Court held a hearing on that motion on February 17, 1994.

At the February 17th hearing, several aspects of the parties plea agreement were discussed in detail. It was revealed that the Defendant was given "the opportunity to cooperate" with the Government with the prospect of earning a departure motion. Briefly the Defendant's role in cooperating with the Government was to be as follows. While incarcerated in the D.C. Jail, the Defendant was to help the government identify DOC workers who may be dealing drugs in the jail. After identifying these individuals, the Defendant was instructed to convey to those individuals his interest in buying drugs at some point. When the Defendant had advanced to this stage with a prospective target, he was instructed to contact *only* his attorney or the detective overseeing his cooperation with the information that an employee of the DOC was willing to sell him drugs. At that point, the Detective would evaluate the information provided by the Defendant and decide whether to set up a sting aimed at apprehending the suspected employee. At no point was the Defendant to contact anyone with this information other than his attorney or the supervising detective.

After entering his plea, the Defendant began supplying information. Detective Sovonick, the supervising detective, testified at the February 17, 1994, hearing that some information was received. It was also conceded by the Government at the February 17th hearing that some of the DOC employees eventually arrested for drug trafficking were included in the Defendant's reports to the Government. However, none of the Defendant's information or efforts directly led to the arrest of any drug-dealing officer.

In December of 1990, the Defendant began making contact with an employee of the DOC suspected of dealing drugs. As a result of this contact, the Defendant attempted to relay the information of this potential target to either his attorney or Detective Sovonick. However, in contravention of his agreement with the Government, the Defendant telephoned his common law wife and attempted to have her relay the coded information. At the February 17th hearing, the Defendant admitted under oath that this was a mistake and was contrary to his instructions and the agreement entered into with Detective Sovonick. As a result of the Defendant's contact on matters concerning the investigation with his common law wife, the Government determined that, with respect to the Defendant, the investigation was compromised and that the relationship with the Defendant should be terminated. At that point, the Government concluded that the Defendant's efforts in the preceding months did not rise to the level of "substantial assistance" which would qualify him for a departure motion.

The Defendant's base offense level was 26 under the Sentencing Guidelines. In addition, the Court granted the Defendant a two-level reduction in his sentence level for Acceptance of Responsibility. Pursuant to the Sentencing Guidelines which specify the sentencing range for an adjusted offense level of 24, the Court was authorized to sentence the Defendant to from between 57 and 71 months. At the sentencing hearing, the Court sentenced the Defendant to 70 months imprisonment, a supervised release term of four years, and payment of a $50 Special Assessment. The Court then found that the Defendant was unable to pay the costs of incarceration and did not impose an alternative sanction.

In addition to other lesser factors, the Court sentenced the Defendant to the high end of the sentencing range because of his previous conviction for a similar offense, his use of his common law wife and children in his drug-dealing activity, and his abuse of the public trust in his official capacity as a Corrections Officer.

## II. DISCUSSION

### A. *THE GOVERNMENT MADE NO REPRESENTATIONS TO THE DEFENDANT OR HIS ATTORNEY THAT HE WOULD BE GIVEN ANYTHING MORE THAN AN OPPORTUNITY TO COOPERATE WITH ONGOING INVESTIGATIONS SO THAT HE MAY, AT THE DISCRETION OF THE DEPARTURE COMMITTEE, EARN A DEPARTURE MOTION FOR SUBSTANTIAL ASSISTANCE.*

■ The Defendant contends that the government acted arbitrarily or in bad faith when it allegedly reneged on its promise to give the Defendant the opportunity to cooperate with the Government's investigation and to thereby qualify for a substantial assistance departure from the statutory minimum sentence pursuant to § 5K1.1 of the Sentencing Guidelines. As a remedy for the alleged breach of the plea agreement, the Defendant asks the Court to order the Government to specifically perform the plea agreement by filing a § 5K1.1 departure motion.

■ When a prosecutor makes some agreement or promise to elicit a plea, that promise or agreement must be fulfilled. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). However, Courts are ill-equipped to review "the Government's enforcement priorities," and "the case's relationship to the Government's overall enforcement plan." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985).

The facts in this case surrounding the Defendant's plea agreement were substantially addressed by this Court's opinion in *United States v. Larry S. Jordan,* 759 F.Supp. 902 (D.D.C.1991). That opinion addressed the Defendant's Rule 32(d) Motion to Set Aside his guilty plea on the basis of either an alleged Government breach of a promise to allow the Defendant to cooperate in return for a departure motion or the existence of a valid entrapment defense[3]. The Defendant in that Motion asked the Court to require the government to negotiate with him so that he may render the 'substantial assistance' which would qualify him for receiving a departure motion. In rejecting the Defendant's Motion on the basis of an alleged Government breach, the Court held, in pertinent part, that "no promises regarding cooperation were made and ... the defendant did not plead guilty in reliance on a promise of a departure for substantial assistance." *U.S. v. Larry S. Jordan,* 759 F.Supp. 902, 906 (D.D.C.1991). In its discussion of this holding, this Court recognized that "the govern-

---

**3.** At the hearing on the Defendant's Rule 32(d) motion, the Court held that the Defendant could not raise his entrapment defense at that advanced stage absent any sufficient explanation for the delay in doing so. *U.S. v. Larry S. Jordan,* 759 F.Supp. 902, 907 (D.D.C.1991). Moreover, entrapment involves two issues, inducement from a Government agent and predisposition. Here the Defendant was caught on video and audiotape making a drug transaction in the presence of his common law wife and children. He has previously been convicted of a felony drug offense related to his dealing in drugs and is an admitted addict. In addition, while the transcript of the Defendant's plea does not indicate conclusively who initiated the Defendant's contact with the undercover police officers, and while there may have been some inducement, the Court has no doubt on the totality of this record

ment has broad discretion in determining whether its resources are wisely spent by continuing discussions with any particular informant." *Id.*, at 905. Further, where the continuance of a relationship between the Defendant and the Government was a matter clearly committed to the prosecutor's discretion, this Court refused to second-guess the prosecutor's exercise of that discretion "[a]bsent any evidence that the prosecutor's decision to discontinue discussions was 'deliberately based upon an unjustifiable standard such as race, religion, or arbitrary classification.'" *Id.*, at 905; *citing Bordenkircher v. Haynes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

Considering the Court's previous findings of fact and the lack of any substantial new factual evidence related to the Defendant's motion now before the Court, it is clear that the Government did not enter into any *quid pro quo* with the Defendant which would obligate it at any point outside the exercise of its own discretion to file a departure motion on the Defendant's behalf. When informing the Court of the possibility of a plea agreement, the Assistant United States Attorney took pains to make it clear for the record that it had made "no representations whatsoever as to whether any request might be made to our Departure Committee regarding substantial assistance." BC at 2. In addition, no evidence submitted by either party at the February 17th hearing changes the Court's previous finding that the Government offered the Defendant nothing more than an opportunity to cooperate.

**B. *THE GOVERNMENT ACTED WELL WITHIN ITS PROSECUTORIAL DISCRETION AND DID NOT ACT ARBITRARILY, INVIDIOUSLY, OR IN BAD FAITH WHEN IT DECIDED TO TERMINATE THE DEFENDANT'S ROLE IN ITS INVESTIGATION WITHOUT FILING A DEPARTURE MOTION FOR SUBSTANTIAL ASSISTANCE.***

■ The Defendant's instant motion revisits the facts brought before the Court in his

32(d) motion. The Defendant again seeks to compel the Government to file a departure motion, however, this motion is based on allegations of bad faith or arbitrariness rather than a simple breach of the plea agreement.

In the Defendant's pleadings for this motion, he agrees that the Government's only obligation pursuant to the plea agreement was "to give [the] defendant the *opportunity to cooperate* in order to earn a § 5K.1 motion." Defendant's In Camera Offer Of Proof In Support Of Motion, p. 1. As this Court noted in *Jordan*, 759 F.Supp. 902 (D.D.C.1991), the parties' plea agreement gave the prosecutor broad discretion to terminate the Government's relationship with the Defendant. It is apparent from the record that this broad discretion was fashioned to protect the Government in a situation such as this one where the Defendant's efforts might compromise the investigation. The Defendant admitted at the February 17th hearing that he had suffered from drug addiction. In addition, the Defendant either lied about or grossly misrepresented his college record in open court[4]. The testimony received at the February 17th hearing also indicates that the Defendant displayed a volatile temper in his briefings with the Government, threatening several times to end his cooperation in the investigation. Finally, the Defendant's good friend and former attorney, Mr. Rudasill, testified that the Defendant zealously protected his self-interest in any given situation. The record supports Mr. Rudasill's characterization where it relates that the Defendant was accompanied by his common law wife and their children in an effort to shield his drug dealing when he was caught on videotape performing the acts which led to his arrest. Transcript of Defendant's Plea, p. 7.

It is clear from the record that the Government was well within its prosecutorial discretion, and not acting arbitrarily or in bad faith, when it decided to terminate its rela-

---

that the Government could have proven predisposition beyond a reasonable doubt.

4. The Court asked the Defendant if he was a college graduate to which the Defendant replied "yes". Transcript of Defendant's Plea, p. 8.

tionship with the Defendant without filing a departure motion on his behalf. The Defendant admitted that contacting his common-law wife was a mistake under the plea agreement. Considering this breach of the agreement and in light of the Defendant's past conduct, the Government could reasonably conclude that termination of the agreement with the Defendant was necessary to protect its overall investigation. Finally, no other independent evidence of bad faith on the part of the Government exists on the record.

### III. CONCLUSION

After carefully considering the applicable law, the parties pleadings, and the entire record herein, the Court concludes that the Defendant has not offered any evidence that the Government acted arbitrarily, invidiously, or in bad faith when it decided to end its relationship with the Defendant without filing a departure motion on his behalf. Accordingly, the Defendant's Motion to Vacate, Set Aside, or Correct his Sentence is denied. The Court will issue an order of even date herewith in accordance with this Opinion.