OPINION
Defendant-appellant Jimmie Lee Owens appeals from his conviction and sentence on four counts of Rape and one count of Gross Sexual Imposition, following a jury trial on those charges. Owens argues that he was denied his due process right to a fair trial because the State engaged in prosecutorial misconduct by indicting him on seven counts of Rape after he refused to accept its plea bargain offer, which would have required him to plead guilty to one count of Sexual Battery in exchange for dismissal of all remaining charges. Owens further argues that his trial counsel provided him with constitutionally ineffective assistance of counsel by failing to object to the State's allegedly improper use of the charging process, by failing to explain to him the terms of the State's plea bargain offer, and by failing to object to several instances of hearsay testimony.
We conclude that pursuant to Bordenkircher v. Hayes (1978),434 U.S. 357, Owens's due process rights to a fair trial were not violated when the prosecutor warned Owens, during plea bargaining, that he would be indicted on more serious charges if he refused to plead guilty to an offense with which he was originally charged, and then, after Owens declined the offer, did indict him on the more serious charges. We also conclude that Owens has failed to establish his claim of ineffective assistance of counsel because his defense counsel's performance was not deficient with respect to any of the matters he cites. Accordingly, the judgment of the trial court is Affirmed.
 I
In August, 1997, Owens was indicted on one count of Gross Sexual Imposition, three counts of Sexual Battery, and one count of Disseminating Matter Harmful to a Juvenile. Before trial, the prosecutor offered Owens a plea bargain, whereby Owens would plead guilty to one count of Sexual Battery, and the State, in turn, would dismiss all of the remaining charges against him, and would not pursue more serious charges of Rape. Owens rejected the State's plea bargain offer. After entering a nolle prosequi to the charges in the first indictment, the prosecutor returned to the Grand Jury and obtained Owens's indictment on one count of Gross Sexual Imposition, seven counts of Rape, and one count of Disseminating Matter Harmful to Juveniles.
Owens was tried by a jury on the charges in September, 1998. The State's chief witness against Owens was the alleged victim, Owen's stepdaughter, H.M., who was approximately 15 when the alleged crimes occurred. H.M. testified that Owens sexually abused her on a number of occasions from August, 1996, to January, 1997. Before the case was sent to the jury, the State dismissed three of the Rape charges and the one charge of Disseminating Matter Harmful to a Juvenile. The jury convicted Owens of the remaining charges. Owens was sentenced to four years on each count, with each of the terms to be served concurrently. Owens appeals from his conviction and sentence.
 II
Owen's First Assignment of Error states:
 APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WAS VIOLATED BY THE STATE'S IMPROPER USE OF THE CHARGING PROCESS.
Owens essentially argues that the State's decision to indict him on more serious charges following his rejection of its plea bargain offer constituted impermissible retaliation for his decision to exercise his right to a trial on the charges for which he was originally indicted. We disagree.
In Bordenkircher v. Hayes (1978), 434 U.S. 357, the court held that the Due Process Clause of the Fourteenth Amendment was not violated where a state prosecutor carries out a threat made during plea negotiations to re-indict an accused on more serious charges if the accused does not plead guilty to the offense with which he was originally charged. The court noted that "[w]hile confronting a defendant with the risk of more severe punishment clearly may have a `discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' — and permissible — `attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" Id. at 364, quoting Chaffin v. Stynchcombe (1973),412 U.S. 17, 31. Noting that the defendant in that case was "properly chargeable" under the more serious offense for which he had been re-indicted, the Bordenkircher court found that "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher, supra.
Here, as in Bordenkircher, the prosecutor informed the defense at the time she made her plea bargain offer that if Owens did not accept the offer requiring him to plead guilty to one count of Sexual Battery, she would return to the grand jury and have Owens indicted on the more serious charges of Rape. When Owens rejected the offer, the prosecutor did what she had warned Owens she would do. In order to secure the indictments, the State had to demonstrate that there was probable cause to believe that Owens was guilty of the seven counts of Rape listed in the indictment. Presumably, the State made the necessary showing of probable cause, since the grand jury voted to return an indictment charging seven counts of Rape. See, generally, Adamson v. May Co.
(1982), 8 Ohio App.3d 266, 268-269 (in malicious prosecution actions, return of an indictment by grand jury creates rebuttable presumption that probable cause exists).
Owens argues that the prosecutor's dismissal of several of the Rape counts[1] shows that the State lacked probable cause to believe that he committed Rape. We disagree. As the State points out, there are a number of reasons why a grand jury's finding of probable cause as to a specific count will not result in a conviction at trial with respect to that same count or why the State may subsequently decide to dismiss a count in the indictment. These reasons include, among other things, that: (1) the burden of proof is higher at trial; (2) the Rules of Evidence are not applicable in grand jury proceedings, Evid.R. 101(C)(2); and (3) a witness may be unable to effectively communicate his or her story to the trial jury. Furthermore, at trial, the prosecutor may elect, for sound strategic reasons, to present only a few charges for which the evidence, as developed for trial, is the strongest, and to dismiss other charges for which the evidence is weaker. The weaker charges may convince the jury that the entire case against the defendant is weak, thereby jeopardizing conviction on the stronger charges. Also, the marginal value of convictions on the weaker charges is slight, since convictions on the stronger charges will result in a substantial incarceration. The prosecutor may, therefore, reasonably conclude that the added value of the weaker charges is not worth the risk that their presence will undermine the likelihood of convicting the defendant on the stronger charges. Furthermore, this calculus must be evaluated in the dynamic setting of trial preparation, in which strength of the evidence for any particular charge is not constant, but varies with the effectiveness of the testimony of the various witnesses, as that testimony is prepared for trial, or even elicited at trial. In short, the State's decision to have a count or counts dismissed prior to the case being sent to the jury does not, standing alone, demonstrate that the grand jury never had probable cause to issue the indictment.
In order to demonstrate that the grand jury lacked probable cause to indict him on the seven counts of Rape, Owens needed to establish that the evidence presented to the grand jury was insufficient to show probable cause to believe that he committed the seven counts of Rape listed in the indictment. There is no showing in the record before us that Owens ever sought to obtain that material by establishing a "particularized need" to examine the evidence presented to the grand jury that would outweigh the need to preserve the secrecy normally afforded grand jury proceedings. See State v. Lewis (1993), 85 Ohio App.3d 29, 35. Consequently, it appears from the record that the prosecutor had probable cause to believe that Owens committed the seven counts of Rape alleged in the indictment that was returned after Owens rejected the State's plea bargain offer.
In light of the foregoing, Owens's First Assignment of Error is overruled.
 III THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION ONE, TEN AND SIXTEEN OF THE OHIO CONSTITUTION.
Owens argues that his trial counsel provided him with constitutionally ineffective assistance by failing to object to the State's improper use of the charging process, by failing to explain to him the State's plea bargain offer, and by failing to object to numerous instances of hearsay testimony. We disagree.
In order to prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient, and that he was prejudiced by that deficient performance to an extent that it deprived him of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687. To demonstrate that his counsel's performance was deficient, a defendant must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. To demonstrate that he was prejudiced by that deficient performance to the extent that he was deprived of a fair trial, the defendant must show that but for his counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id.
at 694. A failure to make an adequate showing on either the "performance" prong or the "prejudice" prong of the Strickland
standard will doom the defendant's claim. Id. at 697.
Owens argues that his defense counsel was ineffective for failing to object to the prosecutor's decision to return to the Grand Jury to seek an indictment on the more serious charges of Rape. However, as discussed in our response to Owen's First Assignment of Error, it does not appear from the record before us that the prosecutor engaged in any misconduct by seeking re-indictment on the Rape charges. Therefore, defense counsel's failure to object to the prosecutor's actions did not constitute ineffective assistance of counsel.
Owens also argues that his counsel provided ineffective assistance by not informing him of the State's plea bargain offer or by not making sure that he understood it. We disagree.
Prior to trial, defense counsel informed the trial court, on the record, that Owens refused to permit him to engage in any plea bargaining in this case, and that Owens had taken the position that he was not guilty of the charges and wanted a trial on them. When asked by his counsel if that was correct, Owens answered in the affirmative, explaining that he did not trust the prosecutor. The prosecutor then read into the record the plea bargain she had offered Owens, i.e., if he pled guilty to one count of Sexual Battery, all other charges would be dropped, and the State would not attempt to go forward on the more serious charges of Rape. Defense counsel confirmed that this offer had been made. Owens, in turn, confirmed that his defense counsel had told him about this offer, once again indicating that he had rejected it because he did not trust the prosecutor. At this point, the trial court told Owens that the purpose of the present discussion was to create a record demonstrating that he was aware of the plea bargain offer, had considered it, and had decided to reject it. Owens then stated:
 I never did get anything, hearsay anything, you know. I don't want to go to jail no more than any other man does but what you don't even know what she said there, what that even puts me against or anything. (Emphasis added.)
The trial court responded as follows:
 Well, I'll tell you what. You can talk to Mr. Cox [Owens' defense counsel] over the evening so that you fully understand what that was about. But I simply want the record to be clear that what has happened here as far as plea negotiation and there will be some follow-up conversation with Mr. Owens.
Mr. Cox: Yes, your Honor. I will.
The Court: All right.
Owens contends that the foregoing exchange demonstrates that the trial court was aware that he did not understand the plea bargain offer and, therefore, directed his defense counsel to discuss the matter with him, and "return for a follow-up in court." Owens states that "the follow-up" was never done, and concludes by asserting that "[t]here is no evidence within the record that [he] was informed of the plea offer or understood the plea offer at the time that it was made." We find Owens's argument unpersuasive.
First, the portion of the transcript quoted from above shows that the trial court directed Owens's defense counsel to address any question that Owens may have had regarding the concerns that he had just raised with the trial court. However, it does not
show, as Owens contends, that the trial court directed Owens' defense counsel "to return for a follow-up in court," after his discussions with Owens. Second, while it is difficult to understand what Owens's precise concerns were, given the fact that he expressed them inartfully, it appears that when Owens said, "I never did get anything, hearsay anything, you know[,]" he was actually referring to his defense counsel's motion in limine to exclude certain hearsay statements made by H.M., which the parties had discussed immediately prior to their discussion on the plea bargain issue. When the trial court told Owens that he could talk to his defense counsel over the evening so that Owens could "fully understand what that was about[,]" the trial court appeared to be referring to Owens's confusion about the motion in limine to exclude certain hearsay statements, and not about the plea bargain offer.
In any event, the record shows that Owens was informed of the State's plea bargain offer, and that he turned it down because of his distrust of the prosecutor. There is nothing in the record to show that Owens had any reasonable basis for distrusting the prosecutor. Furthermore, there is nothing in the record to show that the performance of Owens's defense counsel was unreasonable in any respect with regard to his duty of informing Owens of the State's plea bargain offer.
Owens also faults his defense counsel for failing to object to the prosecutor's eliciting testimony from witnesses about statements made to them by H.M., allegedly in violation of the trial court's ruling on his pre-trial motion in limine. Owens asserts that those statements were hearsay and, therefore, his defense counsel should have objected to their introduction at trial.
Prior to trial, defense counsel requested that the prosecutor be forbidden from having witnesses like H.M.'s school counselor, two girlfriends, and grandmother, as well as an employee with the county Children's Services Board, and a police officer who helped investigate the case, repeat the allegations against Owens about which H.M. had informed them. The prosecutor proposed that she would call each of those witnesses to testify only that they had had a conversation with H.M., without saying what it was. The court stated:
 At this point, there will be no substance of the statements by [H.M.] to these individuals. Certainly Miss Jones [the prosecutor] is able to get to the jury the fact that she had these various conversations with these various individuals. That's non hearsay (sic).
Defense counsel replied, "[t]hat's correct, your Honor."
One of the witness called by the State was H.M's school counselor, Jeri Fox. Fox testified that H.M. and one of her friends came to her office and told her about a "friend" of theirs who was being molested. H.M. eventually admitted to Fox that she (H.M.) was the "friend" they were talking about. When it appeared that the prosecutor's questioning of Fox was about to convey hearsay statements made by H.M., a sidebar conference was held at which point the trial court warned the prosecutor not to elicit from Fox hearsay statements from H.M. After the sidebar concluded, the prosecutor warned Fox, "[t]his is extremely important. Do not share what was said to you by [H.M.] That's hearsay, okay?" The prosecutor proceeded to obtain from Fox, through a series of leading questions (which drew no objections from defense counsel), that H.M. told her the name of the person who was molesting her, and that the person was an adult male who lived in her home. Fox testified that after gaining this information, she relayed the information to the school's principal, the county liaison person who works with the school and the CSB, which sent a worker and notified the police.
Owens contends that by eliciting the above-cited testimony, the State violated the trial court's ruling on his defense counsel's motion in limine, and that his defense counsel was ineffective for failing to raise an objection to Fox's testimony. We disagree.
"Hearsay" is an out-of-court statement sought to be admitted to prove the truth of the matter asserted. Evid.R. 801(C). Here, the State's purpose in eliciting the above testimony from Fox was to demonstrate how the authorities became involved in the case. The prosecutor did not attempt to elicit from Fox the name of the person who molested her.
Owens also faults his defense counsel for not objecting to alleged hearsay testimony from Detective Thomas Peed, who testified that when he went to Owens' house, H.M. pointed to the area of the basement floor where Owens had allegedly left a semen stain during one of the incidents. Owens contends this constituted impermissible hearsay. Again, we disagree. Detective Peed testified that an evidence technician from the Dayton police collected the stain. The purpose of his testimony was to establish a chain of evidence with respect to the semen stain.
Owens also argues that his defense counsel was ineffective because he failed to object on hearsay grounds to the testimony of Deputy Cynthia L. Sprude, who was permitted to testify without objection that H.M.'s mother, Kim Owens, bolted into the room where Sprude was interviewing H.M., and told H.M., that she hated her and did not want to see her again, and that she was a liar. However, the State did not seek the admission of Ms. Owens's statements to prove the truth of the matter asserted therein. The State certainly was not trying to prove that H.M. was a liar, nor was it trying to prove that Kim Owens hated her daughter and did not want to see her again. Furthermore, defense counsel's decision not to object to this portion of Sprude's testimony may well have been a strategic one. For instance, defense counsel may have believed that the jury would find H.M.'s credibility tainted by the fact that her own mother chose not to believe her accusations against Owens. Under Strickland, supra, a criminal defense attorney's trial strategy is to be accorded broad deference. Id.
at 689-691. Therefore, Owens's defense counsel was not ineffective for failing to object to Sprude's testimony on hearsay grounds.
Additionally, Owens contends that his defense counsel was ineffective for not raising an objection when the prosecutor asked Sprude on redirect examination about whether he (Owens) complied with a grand jury order to provide blood and saliva samples to the State. Essentially, Sprude testified that Owens declined to provide the samples until the trial court had appointed him an attorney, and until he had an opportunity to confer with his attorney. However, Owens's defense counsel was the first to raise the issue of Owens's level of cooperation with the authorities during his cross-examination of Sprude. Defense counsel had sought to portray Owens as being fully cooperative with the police from the start of the investigation, with the implication being that Owens had nothing to hide. The prosecutor's questions to Sprude on redirect were an attempt to rebut the impression that defense counsel had tried to create. It appears likely that Owens's defense counsel chose not to object to the prosecutor's questions on redirect on the grounds that he had "opened the door" to this questioning. Defense counsel's decision not to object under these circumstance cannot be considered objectively unreasonable. Furthermore, as with all the other errors Owens alleges that his defense counsel committed during his trial, there is no reasonable probability of a different outcome if this alleged error had not occurred. In this connection, it is worth noting that the victim, H.M., testified at trial, and was subject to cross-examination, so even if some of the testimony elicited from other witnesses could be considered to have been hearsay testimony concerning H.M.'s out-of-court statements, it is unlikely that the result of the trial would have been different had Owens's trial counsel interposed successful objections to that testimony.
Owens's Second Assignment of Error is overruled.
 IV
Both of Owen's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 _______________________ FAIN, Presiding Judge
BROGAN and WOLFF, JJ., concur.
[1] Owens asserts in his appellate brief that the prosecutor dismissed five of the Rape counts at the close of evidence. In fact, the record shows that the prosecutor dismissed only three of the Rape counts, allowing four others to go to the jury. Owens was convicted on all four of those counts.