SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In re the Matter Concerning the State Grand Jury** (A-15-24) (089571)

**Argued April 28, 2025 -- Decided June 16, 2025**

**RABNER, C.J., writing for a unanimous Court.**

In this matter, the Court reviews the trial court's decision declining to empanel a special grand jury and finding that an "anticipated . . . presentment concerning clergy abuse within the Catholic Church is not authorized by law."

The trial court outlined its reasoning as to why a special grand jury should not be empaneled and could not return a presentment on the topic. The reasons included the commitment of time and resources to empanel grand jurors free of bias; the financial hardship that would be imposed on jurors selected; and the fact that "priests are not public officials and the Catholic Church is not a public entity," such that the presentment would not "relate[] to public affairs or conditions" under Rule 3:6-9(a). The trial court also observed that the "promised presentment" would be "fundamentally unfair." The court explained that anyone accused in the document would not have the right to challenge an allegation in the way a defendant charged by indictment can, and would not have the protections that Rule 3:6-9(c) affords public officials before a presentment is released. The trial court additionally found that the "intended . . . historical review of sexual abuse allegations against Catholic priests" was not a matter of imminent concern under the case law.

The State appealed, and the Appellate Division summarily affirmed the judgment of the trial court. The Court granted certification. 258 N.J. 543 (2024).

**HELD:** The relevant case law and court rule on presentments contemplate the existence of both a grand jury investigation and an actual presentment for an assignment judge to review. But here, no grand jury has completed an investigation, and no presentment exists. Courts cannot presume the outcome of an investigation in advance or the contents of a presentment that has not yet been written. It was therefore premature for the trial court to conclude that any potential presentment in this matter had to be suppressed. The State has the right to proceed with its investigation and present evidence before a special grand jury. If the grand jury issues a presentment, the assignment judge should review the report and publish it if it complies with the

1

legal standards outlined in the Court's opinion. The Court cannot and does not decide the ultimate question in advance.

1.  Article I, Paragraph 8 of the New Jersey Constitution provides that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." Several decisions of the Court expound on the meaning, and explain the contours, of a grand jury presentment:  In re Presentment by Camden Cnty. Grand Jury (Camden I), 10 N.J. 23 (1952); In re Presentments by Monmouth Cnty. Grand Jury (Monmouth), 24 N.J. 318 (1957); In re Presentment by Camden Cnty. Grand Jury (Camden II), 34 N.J. 378 (1961).  (p. 10)

2.  Camden I thoroughly canvassed the history of grand jury presentments. The opinion summarized hundreds of subjects grand juries commented on, including conduct by public bodies, institutions, and officials as well as conduct by non-governmental actors that related to public affairs and conditions. 10 N.J. at 44-59.  The Court responded to the "chief objection" to the use of grand jury presentments -- namely, "that a public official or even a private citizen who is in some way associated with public affairs . . . may not be afforded an opportunity to answer" the criticism leveled against them -- explaining that "the danger is not confined to presentments" and that various protections applied to the issuance of presentments. Id. at 66-67.  The Court cautioned against the selection of grand juries "on a partisan basis," which can lead to "partisan presentments," and emphasized that the assignment judge's "acceptance of a presentment . . . is not a ministerial act"; it is a judicial one. Id. at 67. The Court stated that if a grand jury should "bring in a false presentment out of partisan motives, or indulge in personalities without basis," the assignment judge has the "power to strike the presentment or as much thereof as is palpably untrue." Ibid. Those statements are reflected in Rule 3:6-9.  (pp. 11-15)

3.  Five years later, the Supreme Court addressed two presentments that "the assignment judge refused to file and . . . ordered stricken." Monmouth, 24 N.J. at 320. One related to "the sale and publication of obscene and indecent literature," a matter that did not involve public entities or officials. Ibid.  The other recommended empowering municipal courts "to hear . . . cases involving desertion and nonsupport." Ibid.  The Court found that "[t]he presentments in question . . . spoke of common problems prevailing to an extent demanding added official attention." Id. at 325.  It emphasized that the assignment judge's right to suppress presentments "should be sparingly exercised and exerted only where the matters returned are clearly and unquestionably contrary to the public good" and directed that the presentments under review be filed and published. Ibid.  (pp. 16-17)

4.  In Camden II, the Court reviewed a grand jury presentment about gambling activity and police protection of that conduct. 34 N.J. at 383. In addressing the function and appropriate limits of presentments, the Court reiterated the governing standard:  "[A]

2

grand jury may investigate conditions or offenses affecting the morals, health, sanitation or general welfare of the county . . . . [T]he subject must be a matter of general public interest, or relate to some aspect of public affairs, or to some public evil or condition to which, in the discretion of the jury, the attention of the community should be directed." Id. at 390-91. The Court's summary does not mention "imminence." The Camden II Court focused in large part on the limits and considerations that apply to the censure of a public official in a presentment. It found that two parts of the presentment before it should have been suppressed and remanded a third part for examination. Id. at 394-96, 401. (pp. 17-19)

5. The Court reviews the history and text of Rule 3:6-9. (pp. 19-22)

6. None of the Court's seminal cases on presentments address hypothetical grand jury reports. The cases all involve actual reports that can be reviewed and examined to determine whether they satisfy the applicable legal standards. The Court Rule reflects that as well. Each step of the process it sets forth envisions an actual presentment, returned by a sitting grand jury, which can then be reviewed. No case law or court rule authorizes a judge to evaluate a hypothetical or potential presentment. It is simply premature to determine whether a presentment that has not yet been written, like the "anticipated . . . presentment" here, should be suppressed. (pp. 23-24)

7. When an actual presentment is "clearly and unquestionably contrary to the public good," assignment judges have the authority to strike it. Monmouth, 24 N.J. at 325. But even then, as the Court noted more than a half century ago, the power to suppress should be used "sparingly." Ibid. Here, the trial court's ruling relied in part on the amount of time and resources needed to select and empanel a grand jury. That is not a relevant factor under the case law. Certain other findings of the trial court address the substance of a hypothetical presentment in this matter. The Court does not reach those additional findings, which are also premature. The Court vacates the trial court's analysis relating to the propriety of the proposed presentment in this case. There was no legal basis to decline to empanel a special grand jury or to suppress a potential grand jury presentment here. (pp. 24-25)

**REVERSED and REMANDED to the trial court.**

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.**

SUPREME COURT OF NEW JERSEY

A-15 September Term 2024

089571

In re the Matter
Concerning the
State Grand Jury.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| April 28, 2025 | June 16, 2025 |

Michael L. Zuckerman, Deputy Solicitor General, argued the cause for appellant State of New Jersey (Lyndsay V. Ruotolo, Acting Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, and Jennifer E. Kmieciak and Viviana M. Hanley, Deputy Attorneys General, of counsel and on the briefs).

Lloyd D. Levenson argued the cause for respondent Diocese of Camden (Cooper Levenson, attorneys; Lloyd D. Levenson and Jennifer B. Barr, on the briefs).

Alexander Shalom argued the cause for amicus curiae Official Committee of Tort Claimant Creditors of the Diocese of Camden, New Jersey (Lowenstein Sandler, attorneys; Alexander Shalom, Jeffrey D. Prol, and Brent Weisenberg, on the brief).

Russell D. Giancola of the Pennsylvania and West Virginia bars, admitted pro hac vice, argued the cause for amicus curiae The Catholic League for Religious and Civil Rights (Leech Tishman Fuscaldo & Lampl, attorneys; Russell D. Giancola and John J. Jacko, III, on the brief).

1

Randall J. Peach submitted a brief on behalf of amicus curiae Road to Recovery, Inc. (Woolson Anderson Peach, attorneys; Randall J. Peach, of counsel and on the brief).

Jack Phillips Boyd submitted a brief on behalf of amicus curiae Zero Abuse Project (Jeff Anderson & Associates, attorneys; Jack Phillips Boyd, Jeffrey R. Anderson, Trusha P. Goffe, and Gregory G. Gianforcaro, on the brief).

John Baldante submitted a brief on behalf of amici curiae Survivors Network of those Abused by Priests and New Jersey Coalition Against Sexual Assault (Baldante & Rubenstein, attorneys; John Baldante and Gabriel Magee, on the brief).

Hillary Nappi submitted a brief on behalf of amicus curiae CHILD USA (Hach Rose Schirripa & Cheverie, attorneys; Hillary Nappi, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In 2018, the Attorney General announced that a task force would "investigate allegations of sexual abuse by members of the clergy within the Catholic dioceses of New Jersey" and "present evidence to a state grand jury." Several years later, the Diocese of Camden challenged the grand jury's power to issue a presentment on the subject.

The State Constitution authorizes grand juries to issue presentments. N.J. Const. art. I, ¶ 8. A series of rulings by this Court that date back to 1952 outline the proper scope of a presentment. See In re Presentment by Camden

2

Cnty. Grand Jury (Camden I), 10 N.J. 23 (1952); In re Presentments by Monmouth Cnty. Grand Jury (Monmouth), 24 N.J. 318 (1957); In re Presentment by Camden Cnty. Grand Jury (Camden II), 34 N.J. 378 (1961).

In those cases, the Court explained that grand juries "may investigate conditions or offenses affecting the morals, health, sanitation or general welfare of the" community. Camden II, 34 N.J. at 390-91. A grand jury may also prepare a report or presentment and propose reforms. In that way, presentments enable grand juries "to voice the conscience of the community," Camden I, 10 N.J. at 66, and bring matters that relate to public affairs and conditions to the public's attention, Camden II, 34 N.J. at 391.

When a grand jury presentment is complete, an assignment judge examines it and decides whether to release it to the public or strike all or part of it. The judge's power to suppress "should be sparingly exercised" and used only when a presentment is "clearly and unquestionably contrary to the public good." Monmouth, 24 N.J. at 325.

In this matter, the trial court declined to empanel a special grand jury and found that the "anticipated" presentment was not authorized by law. The Appellate Division affirmed that judgment.

We now reverse. The relevant case law and court rule on presentments contemplate the existence of both a grand jury investigation and an actual

3

presentment for an assignment judge to review. But here, no grand jury has completed an investigation, and no presentment exists.

Courts cannot presume the outcome of an investigation in advance or the contents of a presentment that has not yet been written. It was therefore premature for the trial court to conclude that any potential presentment in this matter had to be suppressed.

We find that the State has the right to proceed with its investigation and present evidence before a special grand jury. If the grand jury issues a presentment, the assignment judge should review the report and publish it if it complies with the legal standards outlined below. We cannot and do not decide the ultimate question today.

## I.

### A.

In September 2018, then-Attorney General Gurbir S. Grewal announced the formation of the Clergy Abuse Task Force. Its purpose was "to investigate allegations of sexual abuse by members of the clergy within the Catholic dioceses of New Jersey." See Press Release (Sept. 6, 2018), https://nj.gov/oag/newsreleases18/pr20180906a.html. The Attorney General also set up a hotline for members of the public to report allegations. Ibid.

The Attorney General explained that the announcement followed the recent publication of a grand jury presentment in Pennsylvania on the same subject. Ibid. He stated that New Jersey residents were entitled to know whether the same abuse had occurred here. Ibid.

In April 2021, the State filed an order to show cause that sought to compel compliance with a grand jury subpoena in this matter. In response, the Diocese of Camden ("the Diocese") challenged the authority of a grand jury to issue a presentment relating to allegations of sexual abuse by members of the clergy in the Catholic Church. The Diocese addressed in passing whether a special grand jury should be empaneled. The State argued the challenge was premature because no grand jury had yet issued a presentment. The State also disagreed with the Diocese's position on the merits.

B.

The trial court ruled on the motion in an oral decision on May 25, 2023. The court (1) denied the Attorney General's request to empanel a special state grand jury and (2) found "that the anticipated . . . presentment concerning clergy abuse within the Catholic Church is not authorized by law."

Among other things, the trial court's detailed opinion reviewed Rule 3:6-9, the relevant court rule, as well as several opinions of this Court about

5

presentments -- <u>Camden I</u>, <u>Monmouth</u>, and <u>Camden II</u>. We discuss the Rule and the opinions below.

Even though no grand jury had issued a presentment, the trial court observed that "[t]he Attorney General has made no secret as to its intentions": to "produce a report similar to what a Pennsylvania Grand Jury did." The court noted the Pennsylvania report was 887 pages long and "the product of 24-months work"; "[i]t made several pages of recommendations but was largely a comprehensive report as to alleged sexual misconduct by Catholic priests."

The trial court outlined its reasoning as to why a special grand jury should not be empaneled and could not return a presentment on the topic. The court first pointed to the substantial commitment of time and resources to empanel grand jurors who were free of bias given the proposed subject matter. The court also noted the financial hardship that would be imposed on jurors selected.

The trial court next found that the proposed presentment did not "relate[] to public affairs or conditions," citing <u>Rule</u> 3:6-9(a), because "priests are not public officials and the Catholic Church is not a public entity." "That something is of great public importance or interest," the court observed, does not satisfy the legal standard. The trial court analogized to the definition of a

6

"public servant" under N.J.S.A. 2C:27-1(g), which refers to "officer[s] or employee[s] of government" as well as others "performing a governmental function." The court found the analogy useful, albeit "imperfect," and noted it could not cover Catholic priests or the Catholic Church.

The trial court also observed that the "promised presentment" would be "fundamentally unfair." The court explained that anyone accused in the document would not have the right to challenge an allegation in the way a defendant charged by indictment can, and would not have the protections the Rule affords public officials before a presentment is released. See R. 3:6-9(c).

The trial court next found that the "intended . . . historical review of sexual abuse allegations against Catholic priests" was not a matter of imminent concern under the case law. The court then analyzed the Pennsylvania grand jury report and its recommendations and stated that New Jersey had already addressed those issues, in substance. In light of its ruling, the court did not address the Diocese's argument that the proposed presentment would violate the Establishment Clause under the Federal and State Constitutions. See U.S. Const. amend. I; N.J. Const. art. I, ¶ 4.

The trial court credited the State's argument "that the issue of sexual abuse by clergy members is vitally important." In that regard, the court stated

that its order did not prevent prosecutors from pursuing indictments against specific individuals.

C.

The State appealed.  In an opinion dated June 4, 2024, the Appellate Division summarily affirmed the judgment of the trial court substantially for the reasons the court set forth.

We granted the State's petition for certification.  258 N.J. 543 (2024). We also granted the following organizations leave to appear as friends of the court:  the Official Committee of Tort Claimant Creditors of the Diocese of Camden; Road to Recovery, Inc.; the Zero Abuse Project; the Survivors Network of those Abused by Priests (SNAP) and the New Jersey Coalition Against Sexual Assault (NJCASA), who submitted a joint brief; CHILD USA; and the Catholic League for Religious and Civil Rights.

II.

The State presents two primary arguments in support of reversal.  First, it contends the trial and appellate courts should not have considered the validity of a hypothetical grand jury presentment.  Second, the State argues that a grand jury may issue a presentment that addresses widespread sexual abuse by members of the clergy and "the response thereto."  The State submits that, under settled case law, presentments are not limited to wrongdoing by

8

government entities or public officials. It argues that the proposed presentment here would refer to "public affairs or conditions," consistent with the Court's precedent and Rule 3:6-9.

The Attorney General also committed to extend the protections afforded public officials under Rule 3:6-9(c) to any individuals later named in a presentment in this matter.

The Committee of Tort Claimant Creditors, Road to Recovery, Zero Abuse Project, SNAP and NJCASA, and CHILD USA support the State's position. In general, they maintain that sexual abuse by clergy is an appropriate topic for a presentment. They also draw attention to the lifelong, harmful effects of sexual abuse on victims.

The Diocese of Camden counters that it was not premature to review the proposed presentment because its "subject matter is known." The Diocese argues that case law and Rule 3:6-9 bar the State's intended presentment because the subject does not address a "public affair or condition," and the proposed report does not censure public officials. Instead, according to the Diocese, the State would investigate and report on events within a private, religious entity, which the grand jury is not authorized to do. The Diocese also submits that the "condition" in question is not imminent because "clergy

9

sexual abuse in the Catholic Church has been effectively eradicated in New Jersey."

After oral argument, the Diocese modified its position in one respect. In a letter dated May 5, 2025, the Diocese stated that, "moving forward, [it] will not object to the empanelment of a grand jury for the purpose of considering a presentment pursuant to Rule 3:6-9." Because the State appealed from the judgment of the Appellate Division, and the Diocese is the respondent, the letter did not moot this appeal.

The Catholic League joins the Diocese's arguments. The League also claims that the State has "chosen to target a single religion with its intended presentment," in violation of the Free Exercise Clause of the First Amendment.

III.

A.

Article I, Paragraph 8 of the New Jersey Constitution addresses presentments. It provides that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." N.J. Const. art. I, ¶ 8.

Several decisions of this Court expound on the meaning, and explain the contours, of a grand jury presentment. We discuss each in turn.

10

B.

In Camden I, Chief Justice Vanderbilt thoroughly canvassed the history of grand jury presentments and traced practices under the common law in England up to the modern era. There were two types of presentments under the common law: "criminal presentments," which outlined offenses but stopped short of an indictment, and presentments about matters of public concern that might not amount to criminal offenses. Camden I, 10 N.J. at 35. Over time, "[p]resentments in the sense of informal indictments had disappeared, but presentments concerning public affairs were frequent." Id. at 44.

The Court's opinion provided examples of presentments from forty-three grand jury terms in Mercer and Essex Counties, which spanned the period from 1866 to 1932. Id. at 44-59. Altogether, the opinion summarized hundreds of subjects the grand juries commented on.

A large majority of the presentments addressed conduct by public bodies and institutions and by public officials. The conduct ranged from the operation of prisons, public hospitals, and a school board, to the adequacy of police stations and fire-fighting facilities, and from pollution at a reservoir to election fraud. Ibid.

11

Other presentments addressed private entities and conduct by non-governmental actors that related to public affairs and conditions. One grand jury "filed a presentment stating that certain theatres were centers of moral infection among the juvenile population of the county and generally condemning motion pictures." Id. at 51. Two years later, in 1909, a grand jury "recommended the enactment of a law preventing children under 16 from attending moving picture shows unless accompanied by parents or guardians." Id. at 55.

A third grand jury "recommended that the police department more strictly control dance halls in" Newark. Id. at 51. Another drew "attention to certain abuses in the selling of liquor at private meetings" and anticipated "the chief of police would suppress the abuses." Id. at 52.

An 1892 grand jury presentment discussed domestic violence and recommended that a "whipping post be established . . . as a punishment for wife beaters." Id. at 45. A 1901 presentment addressed the "fraudulent[]" evasion of "personal property taxes" by "the rich" and recommended "the laws be changed . . . to make such conduct criminal." Id. at 47. A 1903 presentment focused on "fire insurance frauds perpetrated in the city, and found that the insurance companies were guilty of willful negligence in not

preventing the frauds." Id. at 48. Multiple grand juries spoke to the high rate of motor vehicle accidents. Id. at 58.

After a comprehensive listing of those and other topics, the Court spoke approvingly of the presentments it reviewed. It observed "that they have been a great force in bringing about many substantial improvements in public affairs which otherwise would not have come to pass or at least would have been long delayed." Id. at 59.

The Court's reading of the history of the 1947 Constitutional Convention reinforced its view. At the time the above presentments were issued, the 1844 Constitution was in effect. In language similar to the modern Constitution, the 1844 Constitution empowered grand juries to issue presentments or indictments. Compare N.J. Const. of 1844 art. I, ¶ 9, with N.J. Const. of 1947 art. I, ¶ 8; see also Camden I, 10 N.J. at 64 (noting only minor changes relating to presentments between the two constitutions).

One delegate to the 1947 Convention asked that the grand jury's authority to issue presentments be removed from the new constitution. Camden I, 10 N.J. at 61 (citing 1 Proceedings of the New Jersey Constitutional Convention of 1947 (Proceedings) 617-22 (asking that the Convention strike the words "presentment or" from the proposed text)). In response, the Attorney General had explained at length how adopting the proposal "would

13

hinder the administration of justice in this State and would not be in the best interest of law enforcement." Id. at 63 (quoting 3 Proceedings 189).

After quoting several pages of the Attorney General's response and noting that the Convention declined to adopt the resolution, the Court observed

> there can be no doubt that the Convention intended to have the [prior] practice . . . with regard to presentments continued under the new Constitution. . . . The retention of the words "presentment or" in the 1947 Constitution could only have meant that <u>the Convention approved presentments of public affairs as they had been known in New Jersey from earliest colonial times</u>.

[Id. at 64-65 (emphasis added).]

The Court also responded to the "chief objection" to the use of grand jury presentments -- namely, "that a public official or even a private citizen who is in some way associated with public affairs . . . may not be afforded an opportunity to answer" the criticism leveled against them. Id. at 66.

The Court noted "the danger is not confined to presentments" and extends to "other forms of public investigations." Id. at 66-67. It also identified various protections that applied to the issuance of presentments: "the care with which grand juries are selected"; the secrecy of a grand jury's deliberations; and "judicial control of . . . presentments when they are handed to the court." Id. at 67.

14

In that regard, the Supreme Court cautioned against the selection of grand juries "on a partisan basis," which can lead to "partisan presentments." Ibid. The Court also emphasized that the assignment judge's "acceptance of a presentment . . . is not a ministerial act"; it is a judicial one. Ibid. After the assignment judge reads a proposed presentment, the Court explained, the judge may give further instructions to the grand jury, which "may lead to further grand jury action." Ibid. The assignment judge can also ask to review the grand jury minutes. Ibid. And if a grand jury, for example, "should . . . forget its oath" and "bring in a false presentment out of partisan motives, or indulge in personalities without basis," the assignment judge has the "power to strike the presentment or as much thereof as is palpably untrue." Ibid. Those statements were later incorporated into the court rules, see R.R. 3:3-9(c) (1953), and now appear in the text of Rule 3:6-9.

The particular presentment before the Court in Camden I addressed serious misconduct in the operation and management of the Camden County jail. Id. at 26, 68. The presentment assigned responsibility to the sheriff, among others, id. at 28-29, and made a series of recommendations, id. at 29-31. The Court ultimately found that the presentment was "clearly in the public interest" and denied the sheriff's motion to expunge parts of it. Id. at 31, 68.

15

C.

Five years later, in 1957, the Supreme Court addressed two presentments that "the assignment judge refused to file and . . . ordered stricken." Monmouth, 24 N.J. at 320. One related to "the sale and publication of obscene and indecent literature," a matter that did not involve public entities or officials. Ibid. The other presentment recommended that municipal courts be empowered "to hear and determine cases involving desertion and nonsupport." Ibid.

For the first presentment, the grand jury heard from distributing companies, dealers, and a citizens' group and "found the publications were 'questionable in nature and of a character a majority of the jury would not wish to have in their homes.'" Id. at 321.

In its analysis, the Supreme Court first made note of the grand jury's "broad right to return presentments," as set forth in Camden I. Id. at 324. The practice, the Court observed, "springs from the common-law right when it relates to matters affecting the public interest and general welfare." Ibid. (emphasis added). The Court stated that presentments "must be limited to matters imminent and pertinent, relating to the public welfare and of ultimate benefit to the community served by the grand jury." Id. at 324-25. The

16

Court's opinion did not elaborate on the term "imminent" and did not refer to it again.

Applying that standard, the Court found that "[t]he presentments in question . . . spoke of common problems prevailing to an extent demanding added official attention." Id. at 325. To suppress the grand jury's reports, the Court added, would not only be "unfair but would have a tendency to deter" future panels, even though "there might be a great need for the moral stimulant of a grand jury directive." Ibid.

The Court emphasized that the assignment judge's right to suppress presentments "should be sparingly exercised and exerted only where the matters returned are clearly and unquestionably contrary to the public good." Ibid. Because the presentments in question fell outside that restriction, and because suppressing them ran "counter to the rationale and philosophy . . . endorsed in" Camden I, the Court directed that the presentments be filed and published. Ibid.

D.

In Camden II, the Court reviewed a grand jury presentment about gambling activity and police protection of that conduct in the City of Camden. 34 N.J. at 383. The presentment also criticized the Director of Public Safety, who served as the Mayor as well. Id. at 382-83. He moved to expunge three

17

portions of the presentment that censured him.  Id. at 384.  The assignment

judge denied the motion without examining the grand jury minutes or allowing

the Director to present additional evidence.  Id. at 385-86.

In addressing the function and appropriate limits of presentments, the

Court reiterated the governing standard:

> [A] grand jury may investigate conditions or offenses affecting the morals, health, sanitation or general welfare of the county . . . .  [T]he subject must be a matter of general public interest, or relate to some aspect of public affairs, or to some public evil or condition to which, in the discretion of the jury, the attention of the community should be directed.
>
> [Id. at 390-91.]

The Court's summary does not mention "imminence."

The Court focused in large part on the limits and considerations that

apply to the censure of a public official in a presentment.  Assignment judges

must examine not only whether a presentment relates to "a condition of public

affairs which is inimical to the best interests of the community," but also

whether the public official being criticized "is intimately related" to the cause

of the condition.  Id. at 392.  In addition, there must be support in the record to

justify the report's contents, including any censure of a public official.  Id. at

393, 396.  That determination, the Court explained, may call for assignment

18

judges to examine grand jury minutes to be satisfied that a "substantial foundation" for the report exists.  Ibid.

Applying that approach, the Court found that two parts of the presentment should have been suppressed.  Id. at 394-96.  The Court remanded a third part to the trial court.  Id. at 401.  It called on the court to examine the minutes of the grand jury and possibly suppress the challenged third portion in light of its opinion.  Ibid.  If necessary, the Court directed that (1) a hearing should be held, (2) the Director "should be permitted to examine the complete Grand Jury minutes (subject to any reasonable safeguards deemed necessary by the court) in aid of his effort to show lack of proof," and (3) the Director "should be permitted also to introduce additional evidence to expose that deficiency."  Id. at 401-02.  Those elements were later incorporated into the court rules and apply to presentments that censure public officials.  See R.R. 3:3-9(c) (1961); R. 3:6-9(c).

IV.

Against that backdrop, we turn to Rule 3:6-9.  The above history demonstrates that the Rule stems from the Court's precedential decisions in Camden I, Monmouth, and Camden II.  The Court made that point in Monmouth when it discussed a prior iteration of the Rule:  "R.R. 3:3-9(c) has been enacted to further clarify the procedure but not to limit the broad scope of

19

the 'Camden' pronouncement."  24 N.J. at 324.  And in <u>Camden II</u>, the Court stated that parts of the Rule "paraphrase" language from <u>Camden I</u>.  34 N.J. at 387.  As noted above, the same is true for language from <u>Camden II</u> that now appears in <u>Rule</u> 3:6-9.

We therefore consider the meaning of the Rule's text in light of the Court's prior pronouncements and decisions.  The evolution of <u>Rule</u> 3:6-9 reveals it is not a freestanding, independent source for the legal standards that govern presentments.

The current Rule dates back to 1953, when the Court adopted <u>Rule</u> 3:3-9. In its original form, <u>R.R.</u> 3:3-9 contained procedures tied to the principles set forth in <u>Camden I</u>.  <u>Monmouth</u>, 24 N.J. at 324.

The Rule was amended in 1961.  The revised Rule added procedures about public officials in response to the decision in <u>Camden II</u>.  <u>See</u> <u>R.R.</u> 3:3-9(a), (c) (1961).

In 1969, the Court made minor changes to the text as it replaced <u>Rule</u> 3:3-9 with <u>Rule</u> 3:6-9.  <u>R.</u> 3:6-9 (1969); <u>see also</u> Pressler, <u>Current N.J. Court Rules</u>, cmts. 3-4 on <u>R.</u> 3:6-9 (1982) (discussing changes).  A 1994 amendment added gender-neutral language.  <u>R.</u> 3:6-9 (1994).

<u>Rule</u> 3:6-9, in its current form, reads as follows:

> (a) Finding.  A presentment may be made only upon the concurrence of 12 or more jurors.  It may refer to

public affairs or conditions, but it may censure a public official only where that public official's association with the deprecated public affairs or conditions is intimately and inescapably a part of them.

(b) Return. A presentment shall be returned in open court to the Assignment Judge, who shall be notified in advance thereof by the foreperson so that the judge may arrange to be available in court to receive it.

(c) Examination; Reference Back; Striking. Promptly and before the grand jury is discharged, the Assignment Judge shall examine the presentment. If it appears that a crime has been committed for which an indictment may be had, the Assignment Judge shall refer the presentment back to the grand jury with appropriate instructions. If a public official is censured the proof must be conclusive that the existence of the condemned matter is inextricably related to non-criminal failure to discharge that public official's public duty. If it appears that the presentment is false, or is based on partisan motives, or indulges in personalities without basis, or if other good cause appears, the Assignment Judge shall strike the presentment either in full or in part. As an aid in examining the presentment the Assignment Judge may call for and examine the minutes and records of the grand jury, with or without the aid of the foreperson or the prosecuting attorney, to determine if a substantial foundation exists for the public report. If the presentment censures a public official and the Assignment Judge determines not to strike, a copy of the presentment shall forthwith be served upon the public official who may, within 10 days thereafter, move for a hearing, which shall be held in camera. The public official may examine the grand jury minutes fully, under such reasonable supervision as the court deems advisable, and be permitted to introduce additional evidence to expose any deficiency.

21

(d) Filing and Publication. Such portions of the presentment as are not referred back to the grand jury for further action or are not stricken in accordance with paragraph (c) of this rule shall be filed and made public, and the Assignment Judge shall instruct the clerk of the grand jury to send copies thereof to such public bodies or officials as may be concerned with the criticisms and recommendations made therein and to the Administrative Director of the Courts. The presentment or any portion thereof shall not be made public by any person except the Assignment Judge. The Assignment Judge shall withhold publication of the presentment until expiration of the time for the making of a motion for a hearing by a public official pursuant to R. 3:6-9(c), and if such motion is made, shall withhold publication of the presentment pending the judge's determination.

(e) Review. The action taken by the Assignment Judge pursuant to this rule is judicial in nature and is subject to review for abuse of discretion by the State or by any aggrieved person, including any member of the grand jury making the presentment.

Like the case law, the Rule does not refer to the definition of a "public servant" under N.J.S.A. 2C:27-1(g) or an earlier statute.

V.

The trial court in this case held "that the <u>anticipated</u> . . . presentment concerning clergy abuse within the Catholic Church is not authorized by law." (emphasis added). There was no presentment before the court because none existed either then or now. No grand jury had completed an investigation or presented a report.

22

None of the Court's seminal cases on presentments address hypothetical grand jury reports. The cases all involve actual reports that can be reviewed and examined to determine whether they satisfy the applicable legal standards.

The Court Rule reflects that as well. In many ways, it contemplates the existence of a grand jury investigation and an actual presentment. Section (a) of the Rule addresses the content of the report. Section (b) directs that the document be returned in open court. Section (c) directs the assignment judge to examine the actual presentment and refer it back to the grand jury in certain circumstances. Section (c) also directs the court to measure the weight of the proofs if a public official is censured; to strike all or part of the report "if it appears that the presentment is false" or "based on partisan motives," among other reasons; to "examine the minutes and records of the jury"; and to serve a public official who is censured in the report with "a copy of the presentment." Under section (c), the public official may then "examine the grand jury minutes."

Each step of the process envisions an actual presentment, returned by a sitting grand jury, which can then be reviewed. No case law or court rule authorizes a judge to evaluate a hypothetical or potential presentment.

Notwithstanding the Attorney General's press release in 2018, we cannot predict what a grand jury may find. Investigations evolve based on the

23

testimony the grand jury hears and the evidence it uncovers. The subject matter and details of a grand jury investigation cannot be frozen in advance. For the same reason, we cannot know in advance what a presentment will say should the grand jury return one.

It is simply premature to determine whether a presentment that has not yet been written should be suppressed. Without a report to review, it is likewise too early for a judge to decide whether to strike parts of a presentment. See R. 3:6-9(c).

When an actual presentment is "clearly and unquestionably contrary to the public good," assignment judges have the authority to strike it. Monmouth, 24 N.J. at 325. But even then, as the Court noted more than a half century ago, the power to suppress should be used "sparingly." Ibid.

The trial court's ruling relied in part on the amount of time and resources needed to select and empanel a grand jury. That is not a relevant factor under the case law. Cf. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("[T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."); State v. Bell, 241 N.J. 552, 559-60 (2020) (discussing "the grand jury's investigative independence").

24

Certain other findings of the trial court address the substance of a hypothetical presentment in this matter. We do not reach those additional findings, which are also premature. They would be moot if the grand jury did not issue a presentment and could also be rendered moot by the contents of a presentment. See Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006) (vacating the Appellate Division's discussion of an issue that could be rendered moot by the new trial the appellate court ordered). We therefore vacate the trial court's analysis relating to the propriety of the proposed presentment in this case.

Because there was no legal basis to decline to empanel a special grand jury or to suppress a potential grand jury presentment here, we reverse the judgment of the Appellate Division.

In addition, because an amicus, in general, cannot raise arguments the parties have not presented, see 257-261 20th Ave. Realty, LLC v. Roberto, 259 N.J. 417, 449 n.4 (2025), we do not address the Catholic League's claim that the proposed grand jury investigation violates the Free Exercise Clause of the First Amendment.

## VI.

For the reasons stated above, the State has a right to empanel a special grand jury in this matter. If a grand jury returns a presentment, the assignment

judge should examine it in light of the relevant legal principles outlined above and publish the presentment if it satisfies those standards.  We do not decide the ultimate question at this time.

The judgment of the Appellate Division, which summarily affirmed the trial court, is accordingly reversed.  We remand the matter to the trial court for further proceedings consistent with this opinion.


JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.